**Paul T. WALTON et al., Appellants
(Plaintiffs below),**

v.

**ATLANTIC RICHFIELD COMPANY,
Appellee (Defendant below).**

**No. 4078.**

Supreme Court of Wyoming.

Oct. 4, 1972.

Raymond B. Whitaker, Casper, for appellants.

Hunter L. Johnson, Jr., Denver, Colo., Houston G. Williams of Wehrli & Williams, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is an appeal prosecuted by Paul T. Walton, Kearns-Tribune Corporation, and Jerome B. Guinand, plaintiffs below, from a judgment entered in their favor in the sum of $1351.28, which they claim is insufficient and is based upon an incorrect measure of damages. In the court below, upon motion for summary judgment, an order was entered granting such motion on the question of liability; and the matter of damages was tried to the court, resulting in the judgment of which appellants complain. This controversy arose upon the following factual background.

Appellants sought damages for breach of a contract provision which appears in an assignment of an oil and gas lease from the United States covering certain lands in Campbell County, Wyoming, as follows:

"If assignee shall desire to surrender and release said lease to the United States before said lease terminates by operation of law of the lease terms, Assignee will accordingly give notice to Assignor at least thirty (30) days prior

to the rental or expiration date, and if within fifteen (15) days thereafter, Assignor, or any one of them, shall notify Sinclair that such lease as to the lands included in the notice be reassigned to Assignor, then Assignee will, without warranty, reassign such lease to Assignor (or to such of them as so desire reassignment) ; but, if within such fifteen (15) days from date of notice, Assignor shall fail to notify Assignee that Assignor (or any of them) so desire reassignment, Assignee may, if it so desires, surrender to the United States such lease as to the lands described in such notice."

The above provision was contained in an assignment of the subject oil and gas lease under date of July 3, 1963, wherein these appellants assigned the lease to Sinclair Oil and Gas Company, the predecessor in interest of Atlantic Richfield Company, appellee here and defendant below. The effective date of the base lease was December 1, 1959. Sinclair paid $3.00 per acre for the assignment of this lease and appellants reserved unto themselves an overriding royalty of 2½ percent. The original lease was for a five-year term which was extended for an additional five years so that the primary lease term expired on November 30, 1969. Appellee and its predecessor paid a yearly rental during this entire term. There was in effect a regulation of the Department of Interior at the time of the expiration of this lease which would permit a lease to be segregated or separated into two leases if an assignment was made of a portion of the land in the original lease. When this was accomplished the lease for both portions, i. e., that retained and that assigned, was extended for two years from the effective date of the assignment and of course for so long thereafter as oil and gas or either of them was produced. This regulation applied only to leases issued prior to September 1, 1960.

On September 11, 1969, some two and one-half months prior to the expiration date of the assigned lease, inquiry was made by appellant Walton's office asking if the lease was to be extended by partial assignment and if so to whom and what acreage was covered thereby. The letter further advised that the subject lease and other leases would expire on November 1, 1969, unless extended by production, drilling, or partial assignments. On the bottom of this letter appellee advised that assignments had been filed and upon approval the lease would be extended for two years. On October 16, 1969, Walton made further inquiry advising of the expiration of the lease unless a partial assignment was filed and asked if such assignment were to be filed.

Appellee did give a partial assignment to Robert Haynie, which assignment was timely filed, but this was not approved by the Bureau of Land Management because of his failure to execute the request for approval of assignment which appears on the reverse of the assignment form. The Bureau notified Haynie of its refusal to approve this assignment, that it was too late to refile such assignment on November 4, 1969, and that unless there were drilling operations commenced thereon or production secured the lease would expire November 30, 1969. The lease did in fact expire and was obtained by another person.

Thereafter appellants filed suit claiming the sum of $114,309 as damages, based upon a claimed value of $100 per acre for the lands covered by the leases. After entry of the order decreeing liability as against appellee and the trial on the question of damages with the result earlier mentioned, appellants prosecuted this appeal. Rather than make our own summary we shall set out from appellants' brief the basis of this appeal:

"1. The trial court erred in its finding that plaintiffs' sole loss was the loss of their 2½% overriding royalty since the plaintiffs also lost the lease which should have been reassigned to them. Consequently, the measure of damages should have been the value of

the overriding royalty plus the value of the lease at the time it was lost.

"2. That since both parties approached the lawsuit thinking and contending that the damage to the plaintiffs was the loss of the lease plus the override and tried the lawsuit on that theory, the Court acted erroneously in its finding that the loss was only that of the override."

No attack is made upon the judgment or findings herein except as before noted. The findings in this case are full and set out in some detail the basis of the court's decision. The court specifically found:

"3. In accordance with the memorandum opinion of this Court made and entered May 10, 1971, pursuant to which the Court's order made and entered May 21, 1971, was entered, the reassignment clause contained in the assignment of July 3, 1963, approved effective September 1, 1963, from Paul T. Walton and others to Sinclair Oil & Gas Company, is not applicable to the facts of this case upon the ground and for the reason that the defendant did not desire to surrender and release said lease, but desired to keep it and attempted to do so by obtaining an extension of two years through the process of assigning a portion of the acreage to another party, and that said lease expired by reason of the fact that through inadvertence and carelessness of such other party the request for approval of the assignment was not signed by such other party and the United States refused to approve the same, and the lease therefore expired at the end of its tenth year."

The basis of the trial court's determination of liability is set out in said judgment as follows:

"4. Notwithstanding the inapplicability of the reassignment clause, the Court, in accordance with its memorandum opinion made and entered May 10, 1971, finds that defendant, after inquiry by plaintiff Walton, advised Walton that extension of the lease through partial

assignment was arranged, thus lulling plaintiffs into inaction; that defendant set in motion the course of conduct which led to the loss of plaintiffs' interest because of the carelessness and culpable negligence of defendant's intended assignee, and that defendant is liable to plaintiffs by reason of said carelessness for the loss plaintiffs sustained thereby; and the Court finds that this loss is the aforesaid 2½% overriding royalty under United States Oil and Gas Lease Wyoming 084336, and that the measure of plaintiffs' damages is the fair market value of said overriding royalty as of the date of expiration of said lease, to-wit, November 30, 1969."

■ The finding of the trial court that the reassignment clause is inapplicable is fully sustained by the record. The operation of this clause was conditioned upon a desire to surrender or release this lease to the United States. Appellee did not desire to surrender or release this lease and did not wish to lose it but took steps and made an effort to retain it, which was unsuccessful because of the failure of its assignee to comply with the requirements of the B.L.M., and lost thereby the lease which it wished to retain. Although appellee did not appeal the judgment herein it does suggest in its brief and argument that no liability could arise in absence of the applicability of the reassignment clause. This would raise a most interesting question of how, in the absence of a contractual duty, any liability against appellee could arise. In the absence of any appeal by appellee this is moot and discussion futile.

The basis of appellants' contention as set out in their brief is that "in essence the court ruled that the defendant Atlantic Richfield Company was liable to plaintiffs for breach of a provision in an assignment." This is simply not the case, as evidenced by paragraph 3 of the findings before set out. Appellants place reliance on the cases of Tenneco Oil Company v. Gaffney, 10 Cir., 369 F.2d 306, and Gladys

Belle Oil Co. v. Turner, Tex.Civ.App., 12 S.W.2d 847, in their insistence that the court must, as in those cases, include the value of the lease in determining the measure of damages. The Gaffney case is clearly distinguishable from this case because there was a finding upon which the decision is based that Tenneco was by the terms of the agreement obligated to give notice of its failure to continue the lease so that assignor might regain the same. Thus, assignor in that case had a right to the lease. The factual situation set out in the Gladys Belle case is rather meager but the inference is clear that this award was based upon a breach of contract to reassign the lease. Since both cases involve a resulting loss of a lease to which claimant was entitled, their holdings are understandable but inapplicable herein where we are faced with a finding that the reassignment clause did not apply. Had Atlantic Richfield been able to extend the lease as they desired, appellants would have had only their override therein.

■ For the trial court to have allowed damages based upon the value of the lease would have been improper under this state of facts. It is basic that the purpose of damages is to compensate the injured party for loss, Hunt v. Thompson, 19 Wyo. 523, 120 P. 181, 184, rehearing denied 122 P. 624; 25 C.J.S. Damages § 3, p. 626; or as phrased in Tenneco Oil Co. v. Gaffney, supra, 369 F.2d at 309:

> " * * * only those damages which are the natural and reasonably foreseeable result of a breach of contract are recoverable. * * *"

There is sufficient evidence of the value of this overriding royalty that the trial court could make this determination. We are convinced that appellants do not suggest that the evidence which was produced to sustain their damages is insufficient, as it is most basic that those who carry the burden to prove damages (appellants in this case) could hardly complain of the insufficiency of their own evidence which would place them in a position of attacking their own judgment.

■ Appellants' contention that the trial court was bound in determining the proper measure of damages to the theories of counsel and that this determination must necessarily include the value of the lease at the time of the loss does not consider the effect of Rule 54(c), W.R.C.P., which is as follows:

> " * * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

3 Barron and Holtzoff, Federal Practice and Procedure, § 1194, p. 35 (1958) sets out its view as follows:

> " * * * Particular legal theories of counsel then are subordinated to the court's right and duty to grant the relief to which the prevailing party is entitled whether demanded or not. * * *"

and later in the same section at p. 40 appears the following:

> " * * * Nor are the legal theories implicit in the complaint binding on the plaintiff. * * *"

See also Johnson v. Frederick, D.C.Neb., 9 F.R.D. 616, 619.

Justice Clark asserts in the case of Nagler v. Admiral Corporation, 2 Cir., 248 F.2d 319, 328, as follows:

> " * * * For it is clear law that it is the duty of the court to grant the relief which the facts before it require; the legal theories which the parties may have suggested or relied on may be of help to the court, but do not control. * * *"

See also Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974, 976, and Fanchon & Marco, Inc. v. Paramount Pictures, 2 Cir., 202 F.2d 731, 734, 36 A.L.R.2d 1336.

Although this court has not directly passed upon this question we have twice since the adoption of this rule held that the prayer is not a part of the complaint and that a trial court is not bound thereby. Jones v. Clark, Wyo., 418 P.2d 792, 801, and State v. Moore, Wyo., 356 P.2d 141, 143, wherein this court observed:

" * * * the final judgment should grant all of the relief to which the plaintiff is entitled whether or not it has been demanded in the pleadings."

The rationale of this clause is applicable to the contention of the appellants.

It would seem further discussion is not required to demonstrate that counsel can certainly not by mutual assertion of inapplicable theories tie the hands of a trial court.

Affirmed.