Perry Evan CLAASSEN,
Appellant (Plaintiff),

v.

Finn E. NORD, and Green Management, Inc., Appellees (Defendants).

Tom COLLINS, Appellee (Defendant and Third–Party Plaintiff),

v.

FARMERS COOPERATIVE ASSOCIATION OF GILLETTE, Wyoming, a Wyoming corporation, (Third–Party Defendant).

No. 87–205.

Supreme Court of Wyoming.

June 10, 1988.

Robert J. O'Neil, Gillette, for appellant.

Robert Jerry Hand of Hand, Hand, and Hand, Casper, for appellee Finn E. Nord.

Ann M. Rochelle of Williams, Porter, Day & Neville, Casper, for appellee Green Management Corp., Inc.

Michael K. Davis of Redle, Yonkee & Arney, Sheridan, for appellee Tom Collins.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

This is an appeal from two trial court orders. The first order sets aside the entry of default and default judgment that appellant Perry Evan Claassen once possessed against appellee Finn E. Nord (Nord). The second order grants summary judgment to appellees Green Management Company (Green), Tom Collins (Collins) and Nord. Appellant raises the following issues:

### "I.

"The trial court erred in removing the default entered against Nord on February 6, 1987 as it was an abuse of discretion to so remove the default without a sufficient showing of 'good cause' by Nord required by Wyoming Rule of Civil Procedure 55(c).

### "II.

"The trial court erred in finding that the duty of Nord to Claassen was the duty owed by a possessor of land to a trespasser and that Claassen failed to estab-

lish facts sufficient to support a finding that Nord breached that duty to Claassen or, in the alternative that Nord owed no duty whatsoever to Claassen.

"III.

"The trial court erred in finding that the duty of Green to Claassen was the duty owed by a possessor of land to a trespasser and that Claassen failed to establish facts sufficient to support a finding that Green breached that duty to Claassen or, in the alternative, in finding that Green owed no duty whatsoever to Claassen.

"IV.

"The trial court erred in finding that the duty of Collins to Claassen was the duty owed by a possessor of land to a trespasser and that Claassen failed to establish facts sufficient to support a finding that Collins breached that duty to Claassen or, in the alternative, in finding that Collins owed no duty whatsoever to Claassen."

We affirm both orders.

### FACTS

This case centers on appellees' alleged tort liability arising out of a gas explosion in a four-plex apartment building that used to be located at 104½ Ross Avenue, Gillette, Wyoming. Collins and his wife owned the building until August 29, 1975, when they sold it to Nord under a contract for warranty deed. They surrendered possession on the date of sale. Nord managed the four apartments in the building from the time he purchased them until May 1981. During this period, there was a fire in apartment number 4; after the fire that apartment was converted from propane gas appliances to electric appliances.

The parties do not dispute that the propane-to-electricity conversion in apartment 4, was completed by a company named "Builders Diversified." Appellant also admits that Builders Diversified maintained the legal status of an independent contractor when it did the work. Cf. *Holliday v.*

*Bannister,* Wyo., 741 P.2d 89, 95 (1987). Appellant has never alleged that any of the appellees might be liable in tort for damages from the explosion under a theory of negligent hiring of Builders Diversified. Rather, appellant's arguments attempt to build genuine issues of fact for his negligence action based on the differences in the deposition testimony of Nord and other witnesses concerning who might have supervised the independent contractor, or what appellees may have known about the conversion later on. Nord contends that his insurance adjuster, Wade Chalfant, hired and supervised Builders Diversified after the 1981 fire. Chalfant's deposition, however, indicates that Nord hired and supervised the independent contractor. Neither Nord nor Chalfant seem to have personal knowledge or recollection of the other's contacts with Builders Diversified. The record shows that the insurance company paid for the work.

Also, there was speculation that the Gillette Fire Department turned off the gas supply to apartment 4 after the 1981 fire by turning the valve on the meter located in a wooden box on the back of the building. This box was not locked but its cover was held shut by a pin.

From the time apartment 4 was converted to electricity, until April 1981, Nord managed the building personally. On April 7, 1981, he retained Green to manage and rent apartment 4. Nord was responsible for repairs under his agreement with Green. This was Green's first involvement in the apartment, and Green never had a written agreement with Nord concerning the other three apartments at 104½ Ross Avenue. Green did, however, collect rents for all of the apartments at 104½ Ross Avenue from April 1981 to June 1982.

In December 1981, Green entered into a six-month term lease agreement for apartment 4 with a man named Edd Nowlin. The lease prohibited subleasing without Green's consent. Appellant moved into apartment 4 in April 1982. He never signed a lease or other agreement with Green or Nowlin, but claims he paid some rent to Nowlin. He also claims both Green

and Nowlin were aware of his presence in the apartment and did not object. There is no evidence in the record suggesting that Collins knew he was there.

By March 1982, Nowlin was behind on his rent payments. He failed to pay after receiving a default notice from Green and his lease was terminated. Nowlin and appellant vacated the apartment in May 1982. It remained empty during most of June. Appellant moved into one of the other apartments in the building, again under some casual rental agreement with the occupant, but he kept a key to apartment 4 because he left a sofa/hide-a-bed there.

On June 29, 1982, appellant entered apartment 4 intending to remove his sofa. Once inside, he lit a cigarette and set off a gas explosion. The explosion burned his face, arms, hands and torso and set apartments 3 and 4 on fire. As a result of his burns, appellant went to a hospital in Texas. His treatment involved repeated skin debridements and skin grafting.

The only contact Collins had with the apartments in 1982 concerned Nord's failure to pay real property taxes, carry insurance on the building or make his payments under the contract for deed. Collins sent Nord notice of this fact in April 1982. In May 1982 Carole Collins sent the escrow agent a demand for return of the deed to the property and other escrow documents. Collins received the deed on May 14, 1982, and promptly recorded it. He did not inspect the building between August 1975 and May 1982. In May 1982, Collins went to inspect the apartments, but was unable to get inside because the door was padlocked.

About the same time, Carole Collins contacted Green regarding possession of the building. Green refused to surrender possession and Collins' attorney later told him he would probably have to sue Nord and Green to regain physical control of the property. In June 1982, Green's vice-president sent Nord a memo telling him of the Collins' inquiries and asking him for a response. Nord made no reply. Green sent Nord a second memo on July 15, 1982, after the explosion and fire, asking about who currently owned the building. The memo stated that failure to respond would mean that Green could assume Nord no longer owned the building. There was no response to the second memo, and on August 3, 1982, Green wrote Nord and told him it was returning control and management of the property to him. This action was finalized with an August 9, 1982, letter from Green to the Collins' attorney stating that Finn Nord had control of the apartments.

During the summer of 1982 the City of Gillette began condemnation proceedings against the building. At the same time, Collins filed a declaratory judgment action against Nord and Green seeking sole legal ownership and possession of the property. In September, Green, acting as agent for Nord, agreed to account to Collins for rents and profits if Collins would allow the building to be demolished. Nord agreed and delivered a warranty deed to Collins at the same time.

In August 1982, the Farmers Co-operative Association of Gillette, which had supplied propane gas to the building, settled an earlier negligence action with appellant. As a result of that settlement, little evidence regarding the delivery of propane to the building is available as a part of this record.

Appellant filed this negligence action against Nord, Collins and Green on June 27, 1986. Green and Collins answered on July 17 and 22, 1986, respectively. Collins counterclaimed against appellant and cross-claimed against Nord and Green. Green also cross-claimed against Nord and Collins.

The record shows that Nord was not served with process until August 13, 1986, when a deputy sheriff located him in the Campbell County Library in Gillette. Nord denies that he was ever served but the trial court did not accept that assertion. By February 6, 1987, Nord still had not filed an answer; appellant filed an application for entry of default against Nord on that day. On March 3, 1987, appellant moved the trial court for a hearing on damages and a hearing was scheduled for March 10.

By this time Nord's insurance company had retained an attorney for him. On March 7, Nord's attorney had been apprised of the upcoming hearing and he called appellant's attorney and asked for a continuance. This request was refused. On March 9, the trial court granted partial default judgment against Nord in the amount of $86,859 in medical expenses and $1,000,000 for pain and suffering. This default judgment was entered without an evidentiary hearing.

Nord's new attorney filed a "Motion to Set Aside Entry of Default" the same day. The next day, the trial court heard argument on this motion and found good cause existed to set aside the entry of default and default judgment conditioned upon Nord paying $225 in attorney's fees to appellant's attorney. Nord, however, was not specifically required to show a meritorious defense to appellant's claims. Nord paid the $225 and filed an answer by March 20.

Just before the default judgment controversy arose, Green and Collins filed motions for summary judgment against appellant on March 2. Nord made a similar motion on March 19. The trial court held a hearing on April 3, and April 21, on these motions, and then granted them. The parties agreed to drop their respective cross-claims and an order finalizing the ruling was entered on July 6, 1987. This appeal followed.

## SETTING ASIDE DEFAULT AND DEFAULT JUDGMENT

Rule 55(c), Wyoming Rules of Civil Procedure, is the trial court's authority to set aside entry of default and default judgment. It provides:

> "(c) *Setting aside default.*—For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered may likewise set it aside *in accordance with Rule 60(b).*" (Emphasis added.)

Rule 60(b) W.R.C.P. provides in pertinent part:

> "(b) Mistakes; inadvertence; excusable neglect, newly discovered evidence, fraud, etc.—On motion, and upon such terms as are just, the court may relieve a

party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within one (1) year after the judgment, order, or proceeding was entered or taken. * * *."

Default judgments are not favored in the law, but a moving defendant carries the burden to show the trial court that his request to set a default aside is within these rules. *Annis v. Beebe & Runyan Furniture Company,* Wyo., 685 P.2d 678, 679–680 (1984). A defendant also is ordinarily required to show that he has a meritorious defense. *Id.*

Rules 55(c) and 60(b), W.R.C.P., are remedial and are intended to promote decisions on the merits when possible. A trial court has wide judicial discretion to grant or deny a defendant's motion under these rules. *Ryan v. Lowe,* Wyo., 753 P.2d 580, 582 (1988); and *Annis v. Beebe & Runyan Furniture Company, supra.* We will not disturb the exercise of that discretion unless appellant demonstrates that the trial court abused it and was clearly wrong. *Ryan v. Lowe, supra.* See also *Martin v. State,* Wyo., 720 P.2d 894, 897 (1986) (defining judicial discretion).

Appellant has not made such a showing in this case. Nord's attorney informed the trial court that he first found out about the case on March 6, 1987, from Nord's insurance carrier. The insurance carrier apparently discovered the litigation from third parties and through its own

investigation sometime during the late summer and early fall of 1987. At the hearing on Nord's motion to set the default judgment aside Nord's attorney asserted that Nord had never really been served, but that if the court accepted that he had, he was ready to submit to the trial court's jurisdiction, file an answer and defend the case. Nord's attorney also explained that he had contacted Claassen's attorney on March 7, 1987, and asked him for a continuance; that request was denied. On the afternoon of March 9, Claassen's attorney submitted a proposed default judgment against Nord to the trial court, but did not tell the court about his discussion with Nord's attorney on March 7. The trial court signed that judgment only to find that Nord's motion to set aside default had been filed on the afternoon of March 9. Based on all of this the trial court found good cause to set aside the default and the default judgment. The trial court did not specifically rule on the showing of a meritorious defense, but it must have believed such a defense existed, particularly in light of its later order granting summary judgment to Nord. Viewing these things together, and considering the fact that this appeal challenges an order setting aside default judgment, we do not see a clear abuse of discretion.

## SUMMARY JUDGMENT

We review a trial court order of summary judgment as follows:

"A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *England v. Simmons*, Wyo., 728 P.2d 1137, 1140–1141 (1986). We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. * * *." *Boehm v. Cody Country Chamber of Commerce*, Wyo., 748 P.2d 704, 710 (1987).

We also have held that self-serving affidavits that are not based in fact are insufficient to create a genuine issue of material fact in this context. *Davenport v. Epperly*, Wyo., 744 P.2d 1110, 1112 (1987).

■ The elements of any negligence claim include a "[d]uty or standard of care on the part of the defendant, and a failure to perform the duty, proximately causing damage to plaintiff. [Citations.]" *Ely v. Kirk*, Wyo., 707 P.2d 706, 709 (1985). We begin this part of the opinion by considering appellant's claims against Collins. Regarding negligence, no matter what type of duty Collins allegedly owed appellant, we are convinced that Collins was entitled to summary judgment. He made a factually based prima facie showing that no genuine issue of material fact existed suggesting he could be held liable for negligence. Appellant failed to offer even a shred of evidence to refute this showing. Appellant did not offer any facts that could be used to imply strict liability in tort against Collins. Summary judgment favoring Collins was proper.

■ With respect to Green and Nord, appellant makes a confusing two-pronged argument that genuine issues of material fact exist concerning the duties these appellees owed appellant when the explosion occurred.

The first prong of appellant's argument concerns Green. Appellant argues that lease documents in the record can be construed such that Nowlin's lease was still in effect when he set off the explosion. He contends that this in turn creates genuine issues of material fact in terms of a negligence duty Green allegedly owed appellant. Our review of the affidavits and documents the parties submitted with their summary judgment pleadings convinces us that Green made an unrefuted showing that it owed appellant a duty to refrain from willfully or wantonly injuring him as a trespasser or licensee. See *Yalowizer v. Husky Oil Company*, Wyo., 629

P.2d 465, 467–469 (1981). Even if we were to elevate the standard of care that Green owed appellant, appellant has failed to put forth *any* evidence refuting Green's showing that it did not breach even an invitee duty to provide reasonable and ordinary care for appellant's safety. See *Mostert v. CBL & Associates*, Wyo., 741 P.2d 1090, 1096 (1987).

Green's first involvement with apartment 4 was well after that apartment had been converted to electrical appliances. Green inspected the apartment at that time and found a new, clean, electric apartment. Green was never responsible under agreement or by its actions for repair or maintenance of the apartment building. Green simply had no reason to foresee danger from an old propane gas line covered by a new linoleum floor under an electric water heater in a closet in apartment 4. Appellant did not produce any evidence sufficient to create a genuine issue of material fact that even suggested otherwise. His own affidavit only implies knowledge of potential danger to Green through hearsay and unsupported, self-serving statements. The affidavit of his expert witness, F.A. Davies, is also based on hearsay, double-hearsay and personal opinion and speculation, not on personal knowledge or other facts. These affidavits and appellant's other evidence are insufficient to create a genuine issue of material fact in a negligence action. See *Davenport v. Epperly, supra.* Summary judgment favoring Green was proper.

■ Summary judgment for Nord was proper as a matter of law. See *Davenport v. Epperly, supra.* Appellant's argument concerning Nord is novel at best. He begins by asserting that under the definition set out in the Restatement (Second) of Torts, § 328 E (1965),[1] Nord was not a "possessor" of apartment 4 when it exploded. Appellant then urges that under our holding in *Pan American Petroleum Com-* *pany v. Like*, Wyo., 381 P.2d 70 (1963), Nord is liable for negligence attributable to a person dealing with an ultrahazardous substance or agency, because he had knowledge that apartment 4 was converted from gas to electricity. This argument fails for a number of reasons, most obviously because the holding in *Pan American Petroleum Company v. Like, supra,* can be distinguished from this case. Pan American involved a negligence claim arising out of injuries received by a workman on a pressurized gas drilling rig. During drilling, the well leaked gas, which ignited and burned the plaintiff. The duty or standard of care applied in Pan American was high because drilling for gas is known, even by laypersons, to be an inherently dangerous activity. *Pan American Petroleum Company v. Like, supra,* at 74–75.

In this case, appellant conceded that the conversion of apartment 4 from propane to electricity was actually done by an independent contractor hired by either Nord or his insurance carrier. Appellant also conceded that no claim for negligent hiring of the independent contractor exists. Consequently, appellant's entire negligence claim against Nord rests precariously on the idea that Nord's knowledge that the apartment had been converted from gas to electric appliances should subject him to negligence liability under an inherently dangerous activity standard of care. We do not agree. The only persons who could arguably be held to that standard of care in this case are the persons who converted the apartment and the persons who sold the gas. Appellant has already settled with the latter entity. He does not have a viable action against Nord.

Affirmed as to all defendants.

---

1. This section provides:
   "§ 328 E. Possessor of Land Defined.
   "A possessor of land is
   "(a) a person who is in occupation of the land with intent to control it, or
   "(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
   "(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."