Mark A. MELEHES, Appellant
(Defendant),

v.

Patrick WILSON, Appellee (Plaintiff).

John A. MELEHES and Targhee
Village, Inc., Appellants
(Defendants),

v.

Patrick WILSON, Appellee (Plaintiff).

Nos. 88–126, 88–131.

Supreme Court of Wyoming.

May 10, 1989.

Rehearing Denied June 12, 1989.

Lawrence B. Hartnett, Jackson, for appellant Mark A. Melehes.

W. Keith Goody of Goody & Lubing, Jackson, and Larry G. Reed of Parsons & Crowther, Salt Lake City, Utah, for appellants John A. Melehes and Targhee Village, Inc.

Robert W. Horn, P.C., Jackson, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellants are Targhee Village, Inc., an Idaho corporation and owner of the golf course in question (Corporation); John A. Melehes, president of the corporation (President); and Mark A. Melehes, the president's son and allegedly the golf course manager (Manager). They appeal from the district court's denial of their separate motions to set aside the default judgment in the sum of $175,443.01, entered against them jointly and severally in appellee Patrick Wilson's personal injury action. Appellee sued them because of a leg injury he received when he stepped into a grasscovered hole in the fourth fairway of the golf course.

We address the following issues raised by appellants:

I. Whether each appellant "appeared in the action" for the purposes of W.R.C.P. 55(b)(2), relating to the three-day written

notice requirement which a plaintiff must satisfy before he is heard on his default judgment application;

II. Whether the default judgment for $175,443.01, for personal injury damages, entered after a proper hearing, is void under the provisions of W.R.C.P. 55(b), (c) and (d), 60(b), 54(c), 8(a), and 9(g), as they relate to each other, if the underlying complaint did not contain, either in its body or its prayer, a specific dollar amount of damages for which the plaintiff demanded judgment;

III. In light of the provisions of W.S. 1-1-109(d), relating to the limitation of a defendant's liability proportionately to his percentage of fault, whether a default judgment jointly and severally against multiple defendants is void for purposes of relief under the provisions of W.R.C.P. 60(b);

IV. Whether the district court judge at the W.R.C.P. 55(b)(2) hearing improperly included punitive damages in the default judgment damages award despite plaintiff's having withdrawn his punitive damages claim;

V. Whether fundamental notions of due process and fair play require that we set aside the default judgment against the Corporation.

We affirm the district court's denial of appellants' motions to set aside the default judgments and affirm those judgments entered against appellants, including $101,039.01 of the $175,443.01 total damages award. As to the remaining $74,404 of that total award, however, we reverse, vacate and remand to the district court for its determination, in accordance with this opinion, of a damages award for past and future pain and suffering based upon only proper evidence and not upon any punitive considerations.

## FACTS

Appellee injured his leg on July 3, 1987, when he stepped into a grass-covered hole on a golf course owned by the Corporation. The concealed hole was lined with plastic pipe and contained sprinkling system valves. Appellee filed his complaint on No-

vember 19, 1987, naming eleven individual and corporate defendants. Neither in the body nor in the prayer of the complaint did appellee state a specific dollar amount of damages for which he demanded judgment. Instead, after alleging a variety of elements of personal injury damages, he stated: "The amount of the damage incurred by Plaintiff will be proved at trial, but it exceeds the minimum jurisdictional limitation of this court." President and Manager were served with the complaint in their individual capacities on November 27, 1987. The Corporation received service through its registered agent, Betty Helderman, on December 17, 1987. None of the appellants timely filed proper responsive pleadings to appellee's complaint.

The record includes five pages of "Interrogatories to Defendant" from appellee containing handwritten answers. President Melehes asserts by affidavit that the handwritten answers are his, and that he mailed them to appellee's counsel within twenty days of their receipt. The Corporation asserts that its registered agent, Betty Helderman, prepared and mailed a personal letter response to appellee's complaint to appellee's counsel within twenty days of service. The sole support for this assertion is the affidavit testimony of President. Neither the letter, nor an affidavit from Betty Helderman is included in the record. Manager asserts by affidavit that he gave the complaint that was served on him to President who promised him he would file an answer and take care of the lawsuit.

Appellee filed applications for entry of default against all three appellants in late December 1987, and January 1988. Appellee moved the trial court for a hearing on damages on January 20, 1988, but none of the appellants were notified of that motion. The hearing on damages took place on March 10, 1988, after which the trial court entered default judgment against all three appellants, jointly and severally, in the amount of $175,443.01.

On March 31, 1988, Manager filed a motion under W.R.C.P. 55 and 60(b), to vacate the judgment and entry of default. He also filed an answer to appellee's com-

plaint. The complaint alleged Mark Melehes was the manager of the course when the injury occurred; Melehes denied that allegation in the answer. President and the Corporation filed similar motions and answers on April 4, 1988. The trial court denied Manager's motion to set aside default judgment on May 7, 1988, and did the same with President and the Corporation on May 13, 1988. Manager filed his notice of appeal to both the default judgment and the denial of his motion to set aside the default judgment on April 20, 1988. President and the Corporation appealed on May 22, 1988.

### STANDARD OF REVIEW

■ The law does not favor default judgment because decisions on the merits are preferable when rules of civil procedure allow for them. *Claassen v. Nord*, 756 P.2d 189, 193 (Wyo.1988). A defendant may move to set aside a default judgment or the entry of default pursuant to W.R. C.P. 55(c) and 60(b). A trial court exercises wide judicial discretion when it responds to such a motion, and we defer to that discretion unless it is shown to have been abused. *Claassen*, 756 P.2d at 193. See also *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986) (defining judicial discretion).

### I.

### APPEARANCE IN ACTION

W.R.C.P. 55(b)(2), provides in pertinent part:

(b) Judgment.—Judgment by default may be entered as follows:

\* \* \* \* \* \*

(2) By the Court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor; \* \* \* If the party against whom a judgment by default is sought *has appeared in the action*, he (or, if appearing by representative, his representative) *shall be served with written notice of the application*

*for judgment at least 3 days prior to the hearing on such application.*

(Emphasis added.)

None of the appellants, as parties against whom a judgment by default was sought, received a written notice of appellee's default judgment application. We must inquire, therefore, whether each appellant "appeared in the action."

### A. *Did Manager "appear"?*

■ By affidavit, Manager asserts that immediately after being served with the complaint and summons he gave them to President, also his father, who promised him he would file an answer and take care of the lawsuit. Manager reasons that President's act of mailing unsworn, unsigned, undated interrogatory answers to appellee's counsel before the answer date expired should inure to Manager's benefit and constitute an "appearance" for purposes of triggering the mandatory three-day written notice requirement in W.R.C.P. 55(b). Further, Manager claims his "mistake" was that he trusted President and his "excusable neglect" was that he did not check to see if President in fact had answered the complaint for him.

Manager cites no legal authority, and we find none, supporting his claim that one defendant's asserted appearance can inure to a co-defendant's benefit in this situation. We have stated before that "[a]n appearance in an action involves some submission or presentation to the court by which a party shows his intention to submit himself to the jurisdiction of the court." (Citation omitted). *U.S. Aviation, Inc. v. Wyoming Avionics, Inc.*, 664 P.2d 121, 124 (Wyo. 1983) In *Annis v. Beebe & Runyan Furniture Company*, 685 P.2d 678 (Wyo.1984), we affirmed the district court's entry of default judgment against defendants who timely requested an additional twenty days to answer, but then failed to file any other papers, or in any other way defend against the action for five months. In our concluding paragraph in *Annis*, 685 P.2d at 680, we sounded a warning to litigants who, like Manager, President and the Corporation

here, choose to handle their lawsuits without benefit of counsel:

> This court has consistently refused to give special consideration to a litigant who chooses to proceed without counsel; he must expect and receive the same treatment as if he were represented by an attorney. Thus, he is held to the same rules of procedure as are required of those qualified to practice law in our courts; otherwise, ignorance is unjustly rewarded.

(Citations omitted). Cf. *Korkow v. Markle*, 746 P.2d 434, 435 (Wyo.1987)

In *Hochhalter v. Great Western Enterprises, Inc.*, 708 P.2d 666, 670 (Wyo.1985), where the defaulted defendant asserted that his failure to appear in the action was due to his counsel's personal problems or psychological disorders, we observed that a litigant who voluntarily chooses an attorney as his representative in an action may not be able to avoid the negligence of this freely selected agent. In *Booth v. Magee Carpet Company*, 548 P.2d 1252, 1254 (Wyo.1976), defendant retained counsel fifty-three days after being served. Defendant's counsel telephoned plaintiff's counsel twenty-three days after the answer date had expired but before entry of default. In this telephone communication defendant's counsel advised he intended to file an answer. There, we found it impossible to equate the unexplained fifty-three day delay in obtaining an attorney with the actions of a reasonably prudent man.

When the record here is considered in light of these holdings, and lacking any supporting authority for Manager's position, we cannot help Manager avoid the negligence of his freely selected agent. His conduct after service was not that of a reasonably prudent man. We hold, therefore, that he did not "appear in this action" for purposes of W.R.C.P. 55(b)(2).

### B. Did the Corporation "Appear"?

■ The Corporation claims to have "appeared in the action" by virtue of an alleged "personal response" which Betty Helderman, its registered agent for service of process, is said to have mailed to appel-

lee's counsel. That "personal response" is not in the record on appeal, nor does the record contain an affidavit from her concerning her composition and mailing of that "personal response." Instead, the alleged existence and mailing of the "personal response" is supported only by the affidavit testimony of President, stating that Betty Helderman told him she sent the response. President's unsupported affidavit is insufficient to show that the Corporation, through its registered agent for service, sent a response to appellee's counsel responding to the complaint. With this in mind, no evidence exists in the record to show that the Corporation made an appearance for purposes of W.R.C.P. 55(b)(2).

### C. Did President "Appear"?

■ President argues that the unsigned, undated, and unsworn handwritten responses to appellee's written interrogatories, which allegedly were received by appellee's counsel before the answer date expired, were sufficient to establish an "appearance" under W.R.C.P. 55(b)(2). We disagree, based on our precedent concerning what constitutes an appearance under the rule.

President begins his argument by pointing to our holding in *Sanford v. Arjay Oil Company*, 686 P.2d 566 (Wyo.1984). In *Sanford*, 686 P.2d at 571, this court held that "[a] party will be deemed to have appeared in the action, even though no formal pleadings have been entered, when contacts between the parties clearly demonstrate an intent to defend." There, the contacts between the parties which were held to demonstrate clearly an intent to defend were responsive pleadings, extensive discovery and a stipulation to an amended complaint. In *Hochhalter* 708 P.2d at 672, we contrasted the contacts in *Sanford* with a telephone call asking for an extension of time and with settlement discussions before the complaint was ever filed. Based on that comparison, we held the latter contacts did not clearly demonstrate an intent to defend. Our holding of no clear demonstration of an intent to defend in *Booth*, 548 P.2d at 1254, is consist-

ent with the logic of *Sanford* and *Hochhalter*. Defense counsel in *Booth* telephoned plaintiff's counsel after the answer was due but before the entry of default and requested additional time to answer. We also note *Smith v. Gamma Construction Company, Inc.*, 387 So.2d 188 (Ala.1980), where a defendant's submission to deposition upon oral examination did not constitute an appearance within the meaning of the Alabama equivalent to W.R.C.P. 55(b)(2).

As we have previously warned, a litigant who chooses to act as his own counsel must expect and receive the same treatment as if he had counsel. He is held to the same rules of procedure with which counsel must comply. W.R.C.P. 8(e)(2), provides, in pertinent part, "[a]ll statements shall be made subject to the obligations set forth in Rule 11." W.R.C.P. 11, provides, in pertinent part, "[a] party who is not represented by an attorney shall sign his pleading and state his address. * * * If a pleading is not signed * * * it may be stricken as sham and false and the action may proceed as though the pleading had not been served." W.R.C.P. 33, provides, in pertinent part: "Each interrogatory shall be answered * * * under oath * * *. The answers are to be signed by the person making them * * *." President failed to comply with these obligations.

In light of our rules and our case law interpreting those rules, we hold that a defendant's unsigned, unsworn, and undated interrogatory responses do not constitute an appearance under W.R.C.P. 55(b)(2). Therefore, President did not "appear in the action" for the purposes of the rule.

## II.

### AD DAMNUM

▮ In the body of his complaint, appellee identified the parties; alleged various duties which the defendants owed to him; alleged the appellants' breaches of those duties; alleged that, as a result of those breaches, his "leg came into contact with the sharp edge of the PVC pipe caus-

ing a cut, avulsion of skin and muscle tissue and serious crippling injury;" and alleged that he "suffered a severe laceration and avulsion of tissue which has required surgical intervention and skin grafting to repair." In the complaint, under the heading "Damages," appellee specifically alleged that as a result of his injury he had incurred medical expenses, pain, loss of wages, loss of ability to earn an income through physical impairment, mental anguish and suffering, permanent disfigurement, and loss of enjoyment of life as past and future damages. He then alleged, "[t]he amount of the damage incurred by Plaintiff will be proved at trial but it exceeds the minimum jurisdictional limitation of this court." Appellee's complaint contained no specific dollar amount of damages for which he demanded judgment.

Appellants argue that the default judgment against them is void under W.R.C.P. 60(b)(4), because the award exceeds in amount that prayed for in the demand for judgment, as proscribed by W.R.C.P. 54(c). We note that W.R.C.P. 55(d) provides in pertinent part: "In all cases a judgment by default is subject to the limitations of Rule 54(c)." From these rules, appellants reason that appellee's complaint must have contained a demand for judgment in a specific dollar amount. They say a demand for damages lacking a specific dollar amount is tantamount to demanding nothing and, therefore, any damages amount awarded by the trial court on default exceeds the amount contained in the demand for judgment.

In support of their argument appellants rely on *White v. Fisher*, 689 P.2d 102 (Wyo. 1984), where this court held that the legislature is prohibited from enacting a statute specifying the content of or foreclosing material from pleadings since such legislation is a clear infringement upon the constitutional and inherent power of this court to make rules. *Id.* at 107. Under that holding we struck down a statute which provided that the ad damnum clause or prayer for damages in a personal injury or wrongful death complaint shall not state any dollar amount as alleged damages or demand a sum as judgment. We did *not* hold, as

appellants here contend, that a personal injury or wrongful death complaint shall state a dollar amount as alleged damages or demand a sum as judgment. In fact, in nondefault cases we have consistently held that the ad damnum clause or prayer for relief is not a part of the complaint. *Walton v. Atlantic Richfield Company*, 501 P.2d 802, 805–06 (Wyo.1972). Additionally, our procedural rules establish no requirement that a complaint state a dollar amount as alleged damages or demand a sum certain as judgment.

In this regard we find that W.R.C.P. 8(a), envisions general, not technical, rules of pleading: "A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, (2) a demand for judgment for the relief to which he deems himself entitled." W.R.C.P. 9(g) provides that items of special damage shall be specifically stated. We have never imposed the requirement that a personal injury and wrongful death complaint must state a dollar amount as alleged special damages or demand special damages in a sum certain as judgment. For example, a pleader may satisfy Rule 9(g) by specifically stating items such as "medical expenses."

In further support of their position, appellants refer us to *Fehlhaber v. Fehlhaber*, 681 F.2d 1015 (5th Cir.1982), which partly relied on *Becker v. S.P.V. Construction Company, Inc.*, 27 Cal.3d 489, 165 Cal.Rptr. 825, 612 P.2d 915 (1980). We reject these decisions since they depended on the application of specific provisions of the California Code of Civil Procedure which differ materially from our general procedural rules. For instance, 14A Cal. Civ.Proc.Code § 425.10 (West 1974), provided:

> A complaint * * * shall contain both of the following:
>
> (a) A statement of the facts constituting the cause of action, in ordinary and concise language.
>
> (b) A demand for judgment for the relief to which the pleader claims he is entitled. If the recovery of money or damages be demanded, *the amount thereof shall be stated.*

(Emphasis added.) In 1979, § 425.10(b) was amended by adding after the word "stated" the following phrase, "unless the action is brought in the superior court to recover actual *or punitive* damages for personal injury or wrongful death, in which case the amount thereof shall not be stated." 14A Cal.Civ.Proc.Code § 425.10 (West Cum.Pocket Part 1988). Also effective in 1974, § 425.11 provided in pertinent part that a plaintiff seeking personal injury or wrongful death damages "shall give notice to the defendant of the amount of special and general damages sought to be recovered (1) before a default may be taken * * *." Under this rule, a plaintiff must satisfy the requirement of notice in relation to a defendant who has not appeared after valid service of process. *Plotitsa v. Superior Court of Los Angeles County*, 189 Cal.Rptr. 769, 140 Cal.App.3d 755 (1983). While interesting in terms of a comparison of Wyoming and California procedural rules, the California cases cited by appellants are obviously distinguishable.

With respect to the federal counterpart of our W.R.C.P. 54(c), limiting the default judgment to the relief demanded in the complaint, it has been said, "[t]he theory of this provision is that once the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether he wants to expend the time, effort, and money necessary to defend the action." 10 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 2663, at 139 (1983). We see no reason why this rationale requires a plaintiff in a personal injury or wrongful death action to state a specific dollar amount as damages in a demand for judgment. We think the rationale is served equally well when that plaintiff states the nature of the injury or death and sets forth the specific elements of damages for which he seeks judgment. Under that form of general pleading a defendant receives reasonable notice that he is at substantial monetary risk if he fails or chooses not to defend the action and suffers default. Our procedural rules charge a defendant in that

situation with the knowledge that when the complaint demands unliquidated damages the district court shall conduct a hearing, take evidence, and determine an amount of damages based on the evidence presented to which the appellee is entitled. The lower court's award on default judgment is always subject to our review on proper grounds shown.

We hold that the default judgment is not void because the complaint did not contain a specific dollar amount in the demand for judgment.

## III.

### JOINT AND SEVERAL LIABILITY

■ At the conclusion of the damages hearing, the district court judge entered a default judgment in the amount of $175,-443.01, against appellants without attributing percentages of fault to each appellant so that each appellant would be liable only for his proportionate share of the total award. Appellants contend that this default judgment thereby imposed joint and several liability on them in violation of W.S. 1–1–109(b)–(d) (June 1988 Repl.). Those statutory provisions state:

(b) The court may, and when requested by any party shall:

(i) If a jury trial:

(A) Direct the jury to find separate special verdicts determining the total amount of damages and the percentage of fault attributable to each actor whether or not a party; and

(B) Inform the jury of the consequences of its determination of the percentage of fault.

(ii) If a trial before the court without jury, makes special findings of fact, determining the total amount of damages and the percentage of fault attributable to each actor whether or not a party.

(c) The court shall reduce the amount of damages determined under subsection (b) of this section in proportion to the amount of fault attributed to the person recovering and enter judgment against

each defendant in the amount determined under subsection (d) of this section.

(d) Each defendant is liable only for that proportion of the total dollar amount determined as damages under paragraph (b)(i) or (ii) of this section in the percentage of the amount of fault attributed to him under paragraph (b)(i) or (ii) of this section.

Following the plain language of these provisions, we hold they come into play only if the case is tried by a jury or to the court and a party requests, or the court on its own, makes a determination of the percentages of fault attributable to each appellant. Here, no trial was held. No party requested a determination of fault percentages. The court on its own chose not to make that determination. We hold the default judgment valid as imposing joint and several liability on appellants.

## IV.

### PUNITIVE DAMAGES

■ In personal injury actions, where the elements of damages include past and future pain and suffering, the law does not provide a specific measure for quantifying damages. The amount to be awarded rests almost totally within the discretion of the fact finder, which is the jury in a jury trial and a judge in a bench trial. Appellate courts are reluctant to interfere with that award decision unless by its amount it carries with it an implication of passion, prejudice or bias or the result of some erroneous basis. *Booth v. Hackney*, 516 P.2d 180, 181 (Wyo.1973). We must use that standard here. Where an erroneous basis has not *influenced* the fact finder's verdict the amount to be assessed for damages suffered by a personal-injury plaintiff is within the sound discretion of the fact trier.

Here, appellants claim that the fact finder included an unknown amount of punitive damages in the award of pain and suffering damages. This claim is premised upon the fact finder's statements:

THE COURT: I wish there was some way I could give you punitive damages.

You can't run a public golf course and leave your sprinkler system concealed. It's like a trap.

[COUNSEL]: Well, Your Honor, that's what we alleged in our lawsuit that it is a trap, and I believe that the problem with punitive damages at this point is that there is no way that they can be based; that's what I see and I would withdraw my request for punitive damages.

THE COURT: I'll work that out another way.

Having said that, the fact finder then announced a total award of $175,443.01. By subtracting the amounts previously described and assigned specifically by the fact finder, which amounts together totaled $101,039.01, we can conclude that the fact finder assessed the amount of $74,404 ostensibly for past and future pain and suffering. The record contains sufficient evidence to support such an award. Unfortunately, the record also contains evidence, in the form of the fact finder's statements, which casts a cloud on the award of that specific amount. The statements suggest that an erroneous basis has influenced the fact finder's verdict. That evidence suggests that some unknown portion of that amount represents punitive damages. In other words, we are looking at a record which contains both proper evidence and improper evidence upon which to base an award. We are unable to determine to what extent the specific award was based on the improper evidence. In such circumstance, we believe the better course is to reverse and vacate that portion of the damages award and remand for the fact finder's determination of that specific element of damages based upon only proper evidence. See *Reiman Construction Company v. Jerry Hiller Company*, 709 P.2d 1271, 1278 (Wyo.1985). In making this determination, the trial court, as fact finder, may consider whatever appropriate admissible evidence the plaintiff's counsel decides to offer. The trial court's determination shall be based upon such evidence and not on any punitive considerations.

## V.

## DUE PROCESS

■ The Corporation claims that its registered agent's failure to notify its officers of the service of process received by her on behalf of the Corporation constitutes excusable neglect and that fundamental due process under that circumstance requires that the appellee not profit at the unnotified Corporation's expense. See W.R.C.P. 60(b). In support of this claim Corporation cites two cases which are easily distinguished from the facts here. In *Clute v. A.B. Concrete*, 179 Mont. 475, 587 P.2d 392 (1978), the former president and registered agent, who had been earlier removed by the corporation's directors, was served with process and failed to notify the corporate officers or directors who, after removing him, had failed to notify the secretary of state of that removal and of the newly registered agent's identity. Under that set of facts, the appellate court affirmed the finding that the corporation did not have actual notice of the action and set aside a default judgment against the corporation. Here, however, the legitimate registered agent was served, as was the corporation's president, John A. Melehes. Under these facts, the Corporation had actual notice of the action. In the second case, *Abarca v. Henry L. Hanson, Inc.*, 106 N.M. 25, 738 P.2d 519 (1987), the defendant corporation had failed to appoint a registered agent and the plaintiff served the secretary of state who failed to send the defendant corporation the required notice of the action. Since the defendant corporation did not have actual notice of the action because of the secretary of state's error, the court set aside the default judgment against the defendant corporation. Again, those facts do not match facts here.

The Corporation's failure to support this issue by proper citation of authority and cogent argument precludes this court from considering it further. *Johnston v. Conoco, Inc.*, 758 P.2d 566, 570 (Wyo.1988).

We hold that the district court did not abuse its discretion in refusing to set aside the default judgments. Affirmed in part,

reversed in part and remanded for further proceedings consistent with this opinion.

CARDINE, C.J., filed an opinion, concurring in part and dissenting in part.

URBIGKIT, J., filed an opinion, concurring in part and dissenting in part, with whom CARDINE, C.J., partially joined.

**CARDINE, Chief Justice, concurring in part and dissenting in part.**

I concur in the opinion of the court, except that I would set aside the default judgment against appellant Mark Melehes. I join in so much of Justice Urbigkit's dissenting opinion as would vacate and set aside this default judgment.

**URBIGKIT, Justice, in part concurring in the decision and otherwise dissenting, with whom CARDINE, Chief Justice, partially joins.**

One of the anathemas or, more explicitly, mine fields within the justice delivery system is procedural default, and expressly the default judgment. Default or forfeiture which denies substantive resolution seems a cultivated growth which is pervasive in the modern day adjudicatory mold. In this case, differing from many, the error is not attributable to attorney performance default with deleterious effect then visited upon the client. Here, the separate litigants in one way or another did it to themselves. Cf. *Hochhalter v. Great Western Enterprises, Inc.*, 708 P.2d 666 (Wyo.1985). I dissent in part because the law should actually, and not in unperformed and empty promise, favor disposition of litigation on the merits and should disfavor forfeiture of rights by a determination which is not correctable after unintended default. See in current review as a summary reversal of denied W.R.C.P. 60(b) relief, *Lee v. Martin*, 533 So.2d 185 (Ala.1988).

In my analysis, it was an abuse of discretion for the trial court to deny corrective opportunity by failing to set aside the default as to the son, Mark Melehes. I might have applied a similarly beneficence to either or both the father and the corporation if motions to set aside the default had been adequately, comprehensively and factually supported by affidavits providing some reasoned and realistic supporting detail. The affidavits should have justified the default occurrence and more comprehensively defined an adequate defense. *Annis v. Beebe & Runyan Furniture Co.*, 685 P.2d 678 (Wyo.1984); *RIM Group v. Mountain Mesa Uranium Corp.*, 78 Wyo. 204, 321 P.2d 229, reh'g denied 323 P.2d 939 (1958).

Since I do not perceive that the father and the corporation met the factual submission burden upon which the trial court's abuse of discretion should be placed, I will concur and affirm the default judgments entered against the father and the corporation, except as to amount, although I do not necessarily conclude that W.S. 1–1–109(d) application can justify the award made.[1]

---

1. The factual basis for cause shown to set aside the default against both the father, as the corporation's president, and the corporation, is largely premised in hearsay and illusion. Specifically detailed first-party affidavit support from the company secretary as the registered agent (which arrangement is normally a serious organizational mistake) or from the president himself, is not provided. See *RIM Group*, 321 P.2d 229. Anyone who sets out to erase an entered default or default judgment incurs a realistic legal burden of detailed and sufficient affidavit support. Even those of us who do not believe in default judgments accept a persuasive submission as the price and basis for adequate trial court decision on the W.R.C.P. 55(c) and W.R.C.P. 60(b) motions to vacate.

The substance of the "excuse" afforded in behalf of the father is stated in paragraphs 4, 5 and 6 of his affidavit:

4. Due to your affiant's lack of training and absence of experience, after reviewing those pleadings, he reasonably believed that the only response required was to provide Answers to Interrogatories pursuant to the preamble to those Interrogatories.

5. In order to give notice of his intent to defend against Plaintiff's claims, your affiant prepared Answers to Interrogatories and mailed them to counsel for Plaintiff, Robert W. Horn, P.O. Box 3346, Jackson, Wyoming 83001, prior to the expiration of twenty days after service of the Summons and Complaint. A handwritten copy of those Answers is attached hereto as Exhibit "A". The Answers

As a second issue, I will concur in the result of the decision reflected in section four of the opinion since judgment amount, even within the factual context of the default hearing, was clearly an award of punitive damages. The evidentiary proof was totally insufficient to justify inclusion. *Adel v. Parkhurst*, 681 P.2d 886 (Wyo. 1984). My reservation about punitive damages, except in the most unusual and egregious circumstance, is that even with acceptance of the entire pleading in this case as true, there still is no proper basis for such an award in addition to the actual proven damages.

My foremost departure in dissent is postured on the trial court denial of the Mark Melehes' motion to set aside the default entered against him. Personally served, he delivered the document to his father, as president of the enterprise, for handling. No lack of concern or due diligence is demonstrated. Furthermore, realistic evidence of his liability for the injury to the appellee from the fall on the golf course is not reflected in the record.[2]

submitted to counsel for Plaintiff were in type written form.

6. Based upon your affiant's limited knowledge of civil procedure and his general notions of fairness and due process, he believed that no further proceedings or judgment might be had without further notice to him.

2. In factual substance, Mark Melehes stated in his affidavit in support of his motion under W.R.C.P. 55(c) and 60(b):

1. I am the same Mark A. Melehes named as a Defendant in the above-entitled civil action.

2. I am the natural son of John A. Melehes, who is also named as a Defendant in the above-entitled civil action.

3. To the best of my knowledge, the land upon which the golf course referred to in the Plaintiff's complaint was and is located and owned by a corporation called Targhee Village, Inc.

4. To the best of my knowledge, my father, John A. Melehes was president of Targhee Village, Inc., at the time that Patrick Wilson alleges to have been injured on the golf course.

5. I am not now, nor have I ever been, an officer, director, manager or an employee in any capacity, manager or otherwise, of Targhee Village, Inc. or the golf course upon which the Plaintiff claims to have been injured, or directed or controlled any of the activities of the corporation or golf course.

6. On November 27, 1987, Tracy Hansen, known to me as a Teton County, Wyoming deputy sheriff, gave me a copy of the complaint and summons issued to me in this action.

7. To the best of my recollection, on the same day that I was given a copy of the summons and complaint, I spoke in person to my father, John A. Melehes, showed him the summons and complaint, and asked him what this lawsuit was all about. At this time, my father took my copy of the summons and complaint and told me in substance that the lawsuit was not my problem; that I was not involved in the business of the golf course; and that he would file an answer and take care of the lawsuit.

8. That I am 36 years of age and to the best of my recollection during my entire life, my father has never told me he would do something that was important, and then fail to do so.

9. After giving the summons and complaint to my father, I heard nothing about this lawsuit until the evening of March 10, 1988, when my wife informed me that she received a telephone call from Larry Hartnett, an attorney who had represented me in the past, and that Mr. Hartnett had informed her that he had heard that a judgment in the amount of $175,000.00 had been entered against me by this Court that same day.

10. I spoke to Mr. Hartnett on March 11, 1988, and he told me that he thought a judgment had been rendered against me the day before for $175,000.00, and asked me what I knew about it.

11. I told Mr. Hartnett that I didn't know anything about it, except that I had given my summons and complaint to my father and he (my father) had told me that he would take care of it.

12. On or about March 13, 1988, I was able to locate my father, who resides in Utah, and told my father what Mr. Hartnett had told me. My father told me that he had taken care of it and filed an answer.

13. On Monday, March 14, 1988, I again spoke to Mr. Hartnett by telephone and related to him my father's response, and Mr. Hartnett told me that he had checked the court file on that same day and that there was no answer or any other kind of paper filed by my father.

14. I contacted my father again by telephone on March 16, 1988, and told him * * * Mr. Hartnett said * * * there was no answer from him in the court file, to which my father responded that he had personally prepared an answer, signed it and mailed it to Mr. Robert Horn, the attorney who had filed the complaint, within the time allowed.

15. I was genuinely surprised and confused when I learned that my father had not filed an answer with the court on my behalf.

It is recognized that consideration of an appeal from a refusal of the trial court's exercise of discretion to set aside a default or default judgment entails an examination of that discretion evaluated with due regard to certain standards. *Claassen v. Nord,* 756 P.2d 189 (Wyo.1988); *Booth v. Magee Carpet Co.,* 548 P.2d 1252 (Wyo. 1976); *RIM Group v. Mountain Mesa Uranium Corp.,* 78 Wyo. 204, 321 P.2d 229 (1958). That principle, as a standard of justice, is defined for this jurisdiction in *Lake v. Lake,* 63 Wyo. 375, 182 P.2d 824 (1947) and then reemphasized in *Westring v. Cheyenne National Bank,* 393 P.2d 119 (Wyo.1964) and *Claassen,* 756 P.2d 189.

" * * * Judgments by default are not favored. Courts prefer that cases be tried upon the merits. 'It is generally recognized that the discretionary power of the court should be liberally exercised in furtherance of justice, to the end that cases may be disposed of upon their merits rather than upon technicalities or fortuitous circumstances.' Freeman, supra [1 Freeman on Judgments, p. 580 (5 Ed.)], Sec. 292. 31 Am.Jur. 265, Sec. 715. * * *"

*Westring,* 393 P.2d at 122 (quoting *Lake,* 182 P.2d at 834).

As this record is presented, there is nothing that Mark Melehes did which would be unusual or inattentively careless. Furthermore, his liability for the injury is surely tested under any theory which is directly controverted and supported by his affidavit regarding his non-relationship to the golf course and the operating entity. His liability, if any, should be proven before unjustified assessment is inflicted.

I concur in the results only to affirm the default judgment against the father, John A. Melehes, and Targhee Village, Inc., and concur in the remand for a proper determination of amount. I would also reverse and remand for an order setting aside the default judgment against Mark Melehes so that his liability can be tried and determined on the merits. To me, justice is a

substantive decision on the merits of the issues presented after a fair trial. That is not this case. This court continues to make bad law on non-thinking acceptance of default judgments and ignores our heritage. *Justitia nemini neganda est.* "Justice is to be denied to none." There is more to justice than disposition of litigation.

16. I am not an irresponsible person and I truly believed that my father would file the papers with the court to protect me.

17. The statements contained in this Affidavit are based upon my personal knowledge and are true to the best of my information and belief.