FIRST SOUTHWESTERN FINANCIAL
SERVICES, Appellant (Plaintiff),

v.

James M. LAIRD, Sharon K. Laird, Mary
Katherman and Willard S. Robinson,
Appellees (Defendants).

No. 93–283.

Supreme Court of Wyoming.

Sept. 30, 1994.

Camille A. Shillenn and Thomas M. Hogan, Casper, for appellant.

James R. McCarty, Casper, for appellees James M. Laird and Sharon K. Laird.

Barry G. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellees Mary Katherman and Willard S. Robinson.

Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and CARDINE, J. (Retired).

MACY, Justice.

Appellant First Southwestern Financial Services appeals from the district court's order which vacated the entries of default against Appellees James M. Laird and Sharon K. Laird and which dismissed the complaint because venue was not proper in Converse County.

We affirm.

## ISSUES

First Southwestern presents four issues for our review:

A. In setting aside the Entry of Default of the Laird Defendants, was the District Court supported by the record and the case authority?

B. Does the "Second Claim For Relief" in the Complaint of the Plaintiff state a cause of action upon which relief can be granted concerning the foreclosure of the real estate mortgage?

C. Did the District Court err in dismissing the Plaintiff's Complaint based upon a finding of improper venue?

D. Did the District Court have jurisdiction to entertain the affirmative defenses of the Laird Defendants?

## FACTS

In 1985, the Lairds borrowed money from First National Bank of Glenrock, which loan was evidenced by a promissory note secured by a mortgage on agricultural real property located in Converse County. The Federal Deposit Insurance Corporation (FDIC) became the receiver of the bank later in that year.

After the Lairds failed to make payments on the debt, the FDIC foreclosed on the mortgage on the Converse County property. The FDIC was the successful bidder at the foreclosure sale of the property with a bid of less than the amount owed on the debt. The Lairds redeemed the property within the statutory redemption period and subsequently sold the property to Appellees Mary Katherman and Willard S. Robinson.

Through assignment, First Southwestern eventually succeeded to the FDIC's position with respect to the promissory note and the mortgage. The Lairds failed to pay the deficiency on the debt.

On January 21, 1993, First Southwestern, seeking to collect the deficiency and/or to foreclose on the mortgage on the Converse County property, filed a complaint in the Converse County district court. On February 4, 1993, Katherman and Robinson were each served in Natrona County with a copy of the complaint and the summons. On February 11, 1993, the Lairds, alleging that venue in Converse County was improper and that the complaint failed to state a claim upon which relief could be granted, entered a special appearance and filed a motion to dismiss the complaint. Katherman and Robin-

son filed their answer on February 24, 1993. The Lairds were finally served in Natrona County on February 26, 1993. On March 5, 1993, First Southwestern responded to the Lairds' motion to dismiss the complaint. No district judge was sitting in Converse County from January 22, 1993, until April 7, 1993.

No further action was taken in the case until June 1, 1993. On that date, First Southwestern filed applications for default against the Lairds, together with affidavits which stated that the Lairds had failed to answer the complaint. The clerk entered a default on that same day against each of the Lairds. On June 1, 1993, the Lairds filed their answer, an objection to the entries of default, and a second motion to dismiss. The Lairds' filings were docketed before the entries of default were docketed.

On June 23, 1993, First Southwestern, claiming that the entries of default precluded such filings, moved to strike the Lairds' answer, objection to the entries of default, and motion to dismiss. The Lairds filed a motion on June 29, 1993, to set aside the entries of default.

After holding a hearing on the parties' motions, the district court vacated the entries of default against the Lairds. The district court found that the mortgage lien on the Converse County property had disappeared when the Lairds redeemed the property after the FDIC had foreclosed upon the mortgage. The district court, therefore, dismissed the complaint for lack of venue in Converse County because no property at issue was situated in that county and the defendants all resided in Natrona County.

## DEFAULT

First Southwestern contends that the district court erred when it vacated the entries of default against the Lairds. Specifically, First Southwestern alleges that, pursuant to W.R.C.P. 6(c)(2),[1] the Lairds' motion to dis-

---

1. W.R.C.P. 6(c)(2) provides:

 (c) *Motions and motion practice.*

 . . . .

 (2) A request for hearing may be served by the moving party or any party affected by the motion within 30 days after service of the motion. Absent a timely request for hearing

the court may, in its discretion, determine the motion without a hearing. A motion not determined within 90 days after filing shall be deemed denied. A party whose motion has been deemed denied shall have 10 days after the effective date of such denial to serve such

miss was deemed to be denied because the district court did not rule upon it within ninety days. First Southwestern argues that, after the ninety-day period had expired, the Lairds had ten days in which to serve their answer. First Southwestern concludes that, since the Lairds did not serve their answer within the ten-day period, they were in default.

We cannot agree with First Southwestern's argument. W.R.C.P. 55 applies to default situations. That rule provides in pertinent part as follows:

> (a) *Entry.*—When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
>
> . . . .
>
> (c) *Setting aside default.*—For good cause shown the court may set aside an entry of default. . . .

 The clerk should not have entered the defaults against the Lairds. They pleaded or otherwise defended against First Southwestern's complaint by filing a motion to dismiss the complaint.

> Failure to "otherwise defend" presumes the absence of some affirmative action on the part of a defendant which would operate as [a] bar to the satisfaction of the moving party's claim. In this context, it is generally held that challenges to matters such as service, venue and the sufficiency of the complaint preclude a default even if pursued in the absence of a responsive pleading. It is undisputed that a motion challenging a complaint for failure to state a claim upon which relief can be granted falls squarely within the ambit of the phrase "otherwise defend."

*Rashidi v. Albright,* 818 F.Supp. 1354, 1355–56 (D.Nev.1993) (citations omitted). *See also Wickstrom v. Ebert,* 101 F.R.D. 26, 32–33 (E.D.Wis.1984).

 We are not convinced by First Southwestern's argument that the Lairds were in default because they did not respond within ten days after their motion to dismiss was

deemed to have been denied pursuant to W.R.C.P. 6(c)(2). First Southwestern does not provide any authority for its interpretation of the rules, and we can find no case law which applies the rules of civil procedure in that way.

 W.R.C.P. 55 provides that a default is available only when the party has not pleaded or otherwise defended. W.R.C.P. 6(c)(2) states: "A party whose motion has been deemed denied shall have 10 days after the effective date of such denial to serve such pleadings or other papers, if any, as may be required or permitted." We do not believe that W.R.C.P. 6(c)(2) demands the filing of an answer within ten days after a motion to dismiss is deemed to have been denied. Under such a holding, the clerk's duty would be expanded beyond that contemplated by W.R.C.P. 55. The clerk's duty under the rule is simply clerical. *Vanasse .v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993) (quoting *Spitzer v. Spitzer,* 777 P.2d 587, 592 (Wyo.1989)). *See also Lee v. Sage Creek Refining Co., Inc.,* 876 P.2d 997, 998 (Wyo.1994). If clerks were given the authority which First Southwestern has advocated, they would determine when a particular filing meets the requirement to "otherwise defend" under the rules, calculate when the motion would be deemed to have been denied, and decide the point at which the party failed to answer. We do not believe that clerks should have this much power in entering defaults.

 First Southwestern could have requested that the district court order the Lairds to answer the complaint by a certain date. *See, e.g., Adel v. Parkhurst,* 681 P.2d 886, 888–89 (Wyo.1984). If the district court had entered such an order and the Lairds had failed to file their answer by the due date, First Southwestern could have requested that defaults be entered against the Lairds. *Id.* Because the defaults against the Lairds had been entered improperly, the district court did not err when it granted the Lairds' request to vacate the entries of default. *Cf. Midway Oil Corporation v. Guess,* 714 P.2d 339, 345 (Wyo.1986) (when a default has been entered improperly, the district

pleadings or other papers, if any, as may be required or permitted.

court has no discretion in granting the movant's request to vacate the entry).

■■■ Even had the defaults been correctly entered, the district court acted properly in setting aside the entry of default because the Lairds showed good cause under W.R.C.P. 55(c). A district court has wide discretion to set aside an entry of default. *Vanasse,* 847 P.2d at 996. The district court's discretion will not be disturbed on appeal " 'unless appellant demonstrates that the [district] court abused it and was clearly wrong.' " *Id.* (quoting *Claassen v. Nord,* 756 P.2d 189, 193 (Wyo.1988)).

■■ As we stated in *Vanasse,* the three factors which are applied to determine whether a motion made under W.R.C.P. 60(b) should be granted may also be applied to determine whether the "good cause" standard of W.R.C.P. 55(c) has been met. *Vanasse,* 847 P.2d at 998; 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.10[2] (1985). Under the three-factor test, we consider:

> " '1. Whether the plaintiff will be prejudiced; 2. Whether the defendant has a meritorious defense; and 3. Whether culpable conduct of the defendant led to the default.' "
>
> *Carlson [v. Carlson],* 836 P.2d [297], 301–02 [ (Wyo.1992) ] (quoting *Amernational Indus., Inc. v. Action–Tungsram, Inc.,* 925 F.2d 970, 976 (6th Cir.1991)).

847 P.2d at 998.

In this case, First Southwestern was not prejudiced when the district court set aside the entries of default against the Lairds. The Lairds filed their objection to the entries of default and their answer on the same day that First Southwestern applied for and received its entries of default. First Southwestern certainly could not have relied upon the entries of default to its detriment. Also,

since the district court granted their motion to dismiss for improper venue, the Lairds obviously had a meritorious defense to the complaint.

The facts of this case show that the Lairds' failure to answer was not the result of culpable conduct. They had earlier filed a motion to dismiss the complaint, and, during much of the time that their motion was pending, no district judge was sitting in Converse County. A reasonable person could have assumed that, because of this unusual situation, no answer was yet necessary. The Lairds' lack of culpable conduct is also apparent from the fact that they filed their answer, second motion to dismiss, and objection to the entries of default on the same day that First Southwestern applied for and received its entries of default against them.

### MORTGAGE AND VENUE

First Southwestern claims that the district court erred when it dismissed its complaint on the basis of lack of venue in Converse County. It argues that, pursuant to WYO. STAT. § 1–5–101(a)(iii) (1988),[2] venue was proper in Converse County because its complaint sought to foreclose upon a mortgage on real property located in that county. In support of its argument, First Southwestern contends that the mortgage was reinstated when the Lairds redeemed the property after the FDIC's foreclosure sale.

■■ In its decision letter, the district court found as follows:

1. When a mortgagor redeems after a foreclosure sale, his legal and equitable title merge, and the mortgage lien "disappears."

2. The foreclosure sale and certificate of sale are null and void to such an extent that any junior liens or mortgages are

---

2. Section 1–5–101(a)(iii) provides:

(a) Actions for the following causes shall be brought in the county in which the subject of the action is situate, except as provided in W.S. 1–5–102 and 1–5–103:

(iii) For the sale of real property under a mortgage, lien or other encumbrance or charge.

revived, but the mortgage, itself, does not survive, and cannot be again foreclosed.

3. The mortgagee's remedy is to bid in at the foreclosure sale the full value of the property, thereby protecting in full his security interest in the property. Further, of course, the mortgagee may obtain a deficiency judgment.

4. Since the mortgage at issue did not survive the foreclosure sale and redemption, there is no real property at issue in Converse County, and the case is improperly venued here.

We hold that the district court's reasoning was correct and that the district court acted properly when it dismissed First Southwestern's complaint for want of venue in Converse County. In reviewing a dismissal of a complaint, we accept the facts stated in the complaint as being true and view them in the light most favorable to the plaintiff. *R.D. v. W.H.*, 875 P.2d 26, 28 (Wyo.1994) (quoting *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992)).

 After agricultural real property has been sold by virtue of a foreclosure by advertisement and sale, the mortgagor has one year in which to redeem the property. WYO.STAT. §§ 1–18–102 to –103 (1988). Wyoming applies a lien theory to mortgages; a mortgagor has a statutory right to redeem the property after the mortgage has been foreclosed upon and the property has been sold at a foreclosure sale. *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595, 601 (Wyo.1989); *Fitch v. Buffalo Federal Savings and Loan Association*, 751 P.2d 1309, 1311 (Wyo.1988). The certificate of purchase which is presented to the successful bidder at the foreclosure sale is only a lien against, or an equitable interest in, the property. The legal title to the property remains with the mortgagor until the statutory redemption period has expired. *Newman v. American National Bank*, 780 P.2d 336, 339 (Wyo.1989).

Section 1–18–103(a) states in pertinent part: "On payment of [the statutory redemption] amount the [foreclosure] sale and certificate [of purchase] granted are void." *See*

*also Powers v. Pense*, 20 Wyo. 327, 337, 123 P. 925 (1912). Upon redemption,

> a mortgagor acquires the equitable interest of the senior mortgagee before it ripens into legal ownership of the property[.] [The equitable] interest [then] merges with the mortgagor's legal title, and the senior mortgage ceases to exist.

*Newman*, 780 P.2d at 340. *See also Powers*, 20 Wyo. at 337, 123 P. 925.

> "Joinder of the ownership in land and of the lien thereon in one person creates a merger and terminates the lien."
>
> . . . .
>
> Thompson on Real Property, § 4798 at 46 (1981 Supp.) (footnotes omitted).

780 P.2d at 339.

 The complaint reveals that the Lairds redeemed the property after the FDIC foreclosed upon its mortgage. Upon redemption, the Lairds acquired the FDIC's mortgage interest. At that point, the lien and the title to the property merged, and the mortgage ceased to exist. No mortgage existed for First Southwestern to foreclose upon.

 Because First Southwestern no longer had any interest in the property situated in Converse County, the only venue statute which could have been applied in this case was WYO.STAT. § 1–5–108 (1988), which provides in pertinent part:

> Every action not otherwise provided for in this chapter shall be brought in the county in which a defendant resides or may be summoned. . . . If the action involves two (2) or more defendants, the action may be brought against all defendants in any county in which one (1) of the defendants resides or may be summoned.

Since all four of the defendants resided and were served in Natrona County, proper venue for the case was in Natrona County. The district court properly dismissed the case on the basis of improper venue. W.R.C.P. 12(b)(3).[3] We do not, therefore, need to address First Southwestern's remaining issue.

---

3. First Southwestern argues that a complaint should not be dismissed simply because it is filed in the wrong county. We agree that normally a

case should not be dismissed on the grounds of improper venue unless a statute specifically mandates such a dismissal. *See Hronek v. Saint*

CONCLUSION

The district court properly vacated the entries of default against the Lairds and did not err when it dismissed the complaint for want of proper venue in Converse County.

Affirmed.

CARDINE, J. (Retired), files a specially concurring opinion.

CARDINE, Justice, Retired, specially concurring.

I concur in the disposition of this appeal and in the affirmance of the district court's order. I do not concur in that part of the court's opinion which holds that a motion not determined within 90 days after filing is not deemed denied as provided in W.R.C.P. 6(c)(2) and does not require further pleading within ten days thereafter. Rule 6(c)(2) expressly so provides and for good reason. It has always been a consistent policy and purpose of our rules to move cases through the courts as expeditiously and at the least cost possible. Rule 6(c)(2) promotes that policy. It should be enforced as written.

Further, I cannot agree that any party should ever be required to affirmatively seek and obtain an order requiring another to answer. The answer to a complaint is always the burden of the answering party, and that obligation should never shift to the complaining party.

In summary, I would hold that at the expiration of 90 days the appellees' pending motion was denied per Rule 6(c)(2). At that point, there was no responsive pleading in the case. Appellees had ten days thereafter to respond and, upon failure, were in default. I agree, nevertheless, in this case, for other proper reasons stated in the court's opinion, the entry of default was properly vacated.

*Joseph's Children's Home,* 866 P.2d 1305, 1310 (Wyo.1994) (quoting *Larsen v. Hall Construction Company,* 770 P.2d 1089, 1092 (Wyo.1989)). Instead, " 'the remedy with respect to questions of venue is a request to change venue to the proper court.' " *Id.*

However, dismissal for improper venue is not, per se, error. *See Spriggs v. Copenhaver,* 459

P.2d 203, 203 (Wyo.1969) (per curiam), and W.R.C.P. 12(b)(3). The facts of this case reveal that dismissal was the proper remedy. The parties discussed the possibility of moving the case to Natrona County or to the federal court system, but they did not take any action in that regard.