**In re Ray Dean McCARN and Ranita Lee McCarn, Debtors.**

**Ray Dean McCARN and Ranita Lee McCarn, Appellants,**

v.

**WYHY FEDERAL CREDIT UNION, Appellee.**

**BAP No. WY–97–045.**

**Bankruptcy No. 97–20214.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 12, 1998.

Georg Jensen, on brief, Cheyenne, WY, for Appellants.

Gregory C. Dyekman and Karl D. Anderson, on brief, Dray, Thomson & Dyekman, P.C., Cheyenne, WY, for Appellee.

Before PUSATERI, BOHANON, and PEARSON, Bankruptcy Judges.

## OPINION

BOHANON, Bankruptcy Judge.

The debtors have appealed an Order of the United States Bankruptcy Court for the District of Wyoming denying confirmation of their chapter 13 plan. The sole issue on appeal is whether 11 U.S.C. § 1322(c)(1) permits the debtors' chapter 13 plan to provide for the cure of a default with respect to a lien on their principal residence if the home was sold at a foreclosure sale prior to the time that they filed bankruptcy, but the debtors had a right of redemption under Wyoming law during the postpetition period. For the reasons set forth below, we grant the debtors

leave to appeal under 28 U.S.C. § 158(a)(3), and affirm the bankruptcy court.[1]

## APPELLATE JURISDICTION

■ The parties have not raised any issues regarding our jurisdiction over this appeal. Nonetheless, we must independently assess whether we have jurisdiction to hear the appeal. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (federal appellate court must satisfy itself that it has jurisdiction over appeal even if the parties concede it); *accord City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1045 n. 8 (10th Cir.1994), *cert. denied*, 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995).

■ This Court, with consent of the parties, has "jurisdiction to hear appeals from ... final judgments, orders, and decrees[.]" 28 U.S.C. § 158(a)(1); *see id.* at § 158(b)(1) & (c)(1); 10 Cir. BAP L.R. 8001–1(c). "[A] decision is ordinarily considered final and appealable under § 1291 [and § 158(a) ] only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945)). Orders may also be considered "final" if they meet the requirements of the collateral order doctrine. *See, e.g., Quackenbush*, 517 U.S. at 710–12, 116 S.Ct. at 1718; *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An order is "final" under the collateral order doctrine if it (1) conclusively determines a disputed question that is completely separate from the merits of the action, (2) is effectively unreviewable on appeal from a final judgment, and (3) is too important to be denied review. *Quackenbush*, 517 U.S. at 712–16, 116 S.Ct. at 1719–20 (relying on *Richardson–*

*Merrell Inc. v. Koller*, 472 U.S. 424, 431, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225–26). The Tenth Circuit has made it clear that orders denying confirmation of a chapter 13 plan are not "final" under 28 U.S.C. § 158(a). *Simons v. FDIC (In re Simons)*, 908 F.2d 643, 645 (10th Cir.1990). Moreover, the elements of the collateral order doctrine are not met in this case. Accordingly, this Court does not have jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1).

■ The Court may, however, exercise jurisdiction over an interlocutory order of a bankruptcy court if leave to hear the appeal is granted. 28 U.S.C. § 158(a)(3); *see id.* at § 158(c); Fed.R.Bankr.P. 8001(b) and 8003. A timely-filed notice of appeal may be considered a motion for leave to appeal if, as in this case, the appellant has not filed such a motion. Fed.R.Bankr.P. 8003(c). Treating the debtors' notice of appeal as a motion for leave to appeal, we conclude that the motion should be granted.

■ We have stated:

Leave to hear appeals from interlocutory orders should be granted with discrimination and reserved for cases of exceptional circumstances. Appealable interlocutory orders must involve a controlling question of law as to which there is substantial ground for difference of opinion, and the immediate resolution of the order may materially advance the ultimate termination of the litigation.

*Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 769 (10th Cir. BAP 1997) (citing 28 U.S.C. § 1292(b); Fed. R.Bankr.P. 8018(b); *American Freight Sys., Inc. v. Transport Ins. Co. (In re American Freight Sys., Inc.)*, 194 B.R. 659, 661 (D.Kan. 1996); *Intercontinental Enter., Inc. v. Keller (In re Blinder Robinson & Co.)*, 132 B.R. 759, 764 (D.Colo.1991)). As will be discussed

---

1. After examining the briefs and appellate record, the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R.Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

below, the question of law in this case is one as to which there is substantial ground for difference of opinion. Whether the question of law is "controlling" and whether the immediate resolution of the order will materially advance the ultimate termination of the litigation initially was not clear inasmuch as our record showed that the debtors intended to file an amended chapter 13 plan in the bankruptcy court. Accordingly, we ordered the parties to supplement the appellate record by filing a copy of the amended plan and a statement regarding the status of the plan to assist us in determining whether we have jurisdiction over the appeal, including whether the appeal is moot. Based on the supplemented record, we conclude that we should exercise jurisdiction over this appeal.

Despite the bankruptcy court's order denying confirmation of the debtors' plan because of its treatment of the secured claim of WyHy Federal Credit Union ("Credit Union"), the appellee, the debtors filed an amended plan which does not alter its treatment of that claim. The Credit Union objected to the debtors' amended plan and, although the debtors have not obtained a stay pending appeal, the supplemental pleadings indicate that the debtors and the Credit Union are waiting for a resolution of this appeal before proceeding in the bankruptcy court. Since the question of law under section 1322(c)(1) remains the same under the amended plan and the parties are looking to this appeal to resolve their dispute, the appeal is not moot, there exists a "controlling" question of law, and resolution of this question of law will materially advance the termination of the litigation. Thus, we have jurisdiction over this appeal under section 158(a)(3).

## STANDARD OF REVIEW

The Bankruptcy Appellate Panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings. Fed. R.Bankr.P. 8013. "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). The undisputed facts presented to the bankruptcy court have not been contested on appeal. The issue in this case does not involve the bankruptcy court's discretion, but rather a question of law, and, therefore, we review the bankruptcy court's order *de novo.*

## BACKGROUND

The debtors executed a note and mortgage in favor of the Credit Union secured by their principal residence. Sometime thereafter, the debtors defaulted by failing to make payments under the note and mortgage, and the Credit Union commenced foreclosure proceedings pursuant to a power of sale contained in the mortgage as authorized by Wyoming Statutes Ann. § 34-4-101 *et seq.* On December 3, 1996, the Credit Union purchased the debtors' home at a foreclosure sale and was given a certificate of purchase in accordance with Wyoming Statutes Ann. § 1-18-102.[2]

On February 28, 1997, the debtors filed a petition seeking relief under chapter 13 of the Bankruptcy Code. At that time, the debtors had three months from December 3, 1996, the date of the foreclosure sale, to redeem their home by paying the amount bid

---

2. Section 1-18-102 states:
 **1-18-102 Certificate of purchase in lieu of deed; contents; recordation of duplicate; admissibility.**
 When real property is sold by virtue of an execution, order of sale, decree of foreclosure or foreclosure by advertisement and sale, the sheriff or other officer, instead of executing a deed to the premises sold, shall give to the purchaser of the lands a certificate in writing describing the property purchased and the sum paid therefor, or if purchased by the plaintiff in

execution or by the mortgagee, the amount of his bid. The certificate shall state that the purchaser is entitled to a deed for the property at the expiration of the period of redemption, unless the property is redeemed prior to that date as provided by law. The sheriff or other officer shall record in the office of the recorder of the county a duplicate of the certificate, signed and acknowledged by him, and the certificate or a certified copy thereof is admissible as evidence of the facts therein contained.
Wyo. Stat. Ann. § 1-18-102.

by the Credit Union together with interest at the rate of ten percent per annum from the date of sale, "plus the amount of any assessments or taxes and the amount due on any prior lien which the purchaser paid after the purchase, with interest." Wyo. Stat. Ann. § 1–18–103(a).[3] The debtors never exercised their right of redemption under Wyoming law.[4]

The debtors filed a chapter 13 plan proposing, inter alia, to cure the default to the Credit Union over time, to reinstate their mortgage, and to make regular payments directly to the Credit Union. The Credit Union objected to the debtors' plan, arguing, in relevant part, that section 1322(c)(1) prevented the debtors from curing the default because their home had been sold at a foreclosure sale that was conducted in accordance with Wyoming law. The bankruptcy court sustained the Credit Union's objection and entered an order denying confirmation of the debtors' plan. This appeal followed.

## DISCUSSION

Section 1322 of the Bankruptcy Code, which governs the content of a chapter 13 plan, states, in relevant part, that:

3. Section 1–18–103 provides:

> **1–18–103 Right of redemption; redemption of agricultural real estate; "agricultural real estate" defined.**
> (a) Except as provided with respect to agricultural real estate, it is lawful for any person; his heirs, executors, administrators, assigns or guarantors whose real property has been sold by virtue of an execution, decree of foreclosure, or foreclosure by advertisement and sale within three (3) months from the date of sale, to redeem the real estate by paying to the purchaser, his heirs, executors, administrators or assigns, or to the sheriff or other officer who sold the property, for the benefit of the purchaser, the amount of the purchase price or the amount given or bid if purchased by the execution creditor or by the mortgagee under a mortgage, together with interest at the rate of ten percent (10%) per annum from the date of sale plus the amount of any assessments or taxes and the amount due on any prior lien which the purchaser paid after the purchase, with interest. On payment of this amount the sale and certificate granted are void.
> (b) In the case of any mortgage upon one (1) or more parcels of real estate any or all of which were agricultural real estate on the date of execution of the mortgage as stated in the mortgage, the period within which the owner,

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .;

(3) provide for the curing or waiving of any default;

. . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due;

. . . . .

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's princi-

his heirs, executors, administrators, assigns or guarantors may redeem the premises sold is twelve (12) months from the date of the sale. (c) The term "agricultural real estate" means any parcel of land in excess of twenty (20) acres lying outside the exterior boundaries of any incorporated city, town or recorded subdivision. If the mortgage recites that the real estate involved is agricultural real estate, it is presumed the parties to the mortgage, their heirs, executors, administrators, assigns, guarantors or successors in interest have agreed to and are bound by all the provisions of law relative to the right of redemption.

Wyo. Stat. Ann. § 1–18–103.

4. The Credit Union argued that the debtors' 90–day redemption period under Wyoming law was extended for 60 days pursuant to 11 U.S.C. § 108(b)(2) and expired on April 29, 1997. Appellant's Appendix, Objection to Debtors' Chapter 13 Plan, p. 2, ¶ 5. The bankruptcy court found, however, that the debtors' right of redemption expired on March 3, 1997. Appellant's Appendix, Order Denying Confirmation, p. 2. Nobody has contested the bankruptcy court's factual finding on appeal. The exact date that the debtors' redemption rights expired is immaterial because it is uncontested that the debtors never sought to redeem their home within any applicable period.

pal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law....

11 U.S.C. § 1322(b)(2), (3), & (5), and (c)(1). Thus, under section 1322(b), a plan may provide for the cure of defaults, but if the default involves a lien on the debtor's principal residence, under section 1322(c)(1), the cure may only be made prior to the time that the property is sold at a foreclosure sale conducted in accordance with applicable nonbankruptcy law. The language of section 1322(c)(1) is clear and unambiguous in establishing the date of the actual foreclosure sale as the cut-off for curing a mortgage default under section 1322(b), and supports the bankruptcy court's conclusion that the debtors had no right to cure their default to the Credit Union because their home had been sold at a foreclosure sale prior to the time that they filed chapter 13. *In re Sims,* 185 B.R. 853, 864–66 (Bankr.N.D.Ala.1995) (section 1322(c)(1) clearly and unambiguously sets a bright-line date, the date of the actual foreclosure sale, as the cut-off to cure a default under a mortgage), *cited with approval in Commercial Fed. Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555, 1558 n. 3 (11th Cir.1996); *accord Cottrell v. United States (In re Cottrell),* 213 B.R. 378, 381 (Bankr.M.D.Ala.1996); *Krawczyk v. United States (In re Krawczyk),* 201 B.R. 589, 591 (Bankr.N.D.Ga.1996); *In re Little,* 201 B.R. 98, 108 (Bankr.D.N.J.1996); *In re Ziyambe,* 200 B.R. 790, 799 (Bankr.D.N.J.1996); *In re Blair,* 196 B.R. 477, 480 (Bankr.E.D.Ark. 1996); *see In re Simmons,* 202 B.R. 198, 202–203 (Bankr.D.N.J.1996) ("[I]t is reasonable to assume that Congress used the term foreclosure sale in its customary sense[,]" *i.e.,* the date of the actual sale.); *accord In re Hric,* 208 B.R. 21, 25 (Bankr.D.N.J.1997).

Finding that a debtor's ability to cure a mortgage default under section 1322(b) is terminated under section 1322(c)(1) on the date of a foreclosure sale is in accord with the policy of establishing a uniform set of laws governing consumer bankruptcy. *See, e.g., Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 241 n. 9 (5th Cir.1984), *quoted in Ziyambe,* 200 B.R. at 798; *see also*

*Wright v. Union Ins. Co.,* 304 U.S. 502, 517, 58 S.Ct. 1025, 1033–34, 82 L.Ed. 1490 (1938) (Congress has the power to modify and affect the property rights established under state law in bankruptcy); *Jim Walter Homes, Inc. v. Spears (In re Thompson),* 894 F.2d 1227, 1230 & 1231 (10th Cir.1990) (interpretation of section 1322 is a question of federal law) (Baldock, J., concurring) (pre-section 1322(c)(1) case recognizing that Art. I, § 8 of the Constitution empowers Congress to establish uniform bankruptcy laws, and this "provision undoubtedly authorizes Congress to promulgate a federal statute delineating a time limitation on the right to cure a defaulted residential mortgage under § 1322(b)"). It also does not offend the goals of chapter 13 of affording wage earners an opportunity to retain their homes while at the same time providing certain protections to mortgagees. Prior to any foreclosure sale, debtors must be given notice of the sale. By the time of the sale, therefore, the debtors have had a reasonable opportunity to retain their residence by filing chapter 13 and proposing a plan to cure any defaults under their mortgage. *Cottrell,* 213 B.R. at 381; *Simmons,* 202 B.R. at 204; *see Smith,* 85 F.3d at 1560 (in pre-section 1322(c)(1) case, court found that bright-line test setting foreclosure sale as the cut-off date to cure a mortgage debt under section 1322(b) struck a "balance between the rights of a debtor ... and the legitimate economic interest in encouraging lenders to invest in home mortgages"); *Federal Land Bank v. Glenn (In re Glenn),* 760 F.2d 1428, 1435 (6th Cir.) (pre-section 1322(c)(1) case finding that terminating cure rights under section 1322(b) on the date of foreclosure sale was a necessary compromise made to protect creditors, and also takes into account the fact that the debtor has had ample notice of foreclosure sale so as to allow the debtor to protect the right to cure), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

The debtors argue that we should disregard the plain language of section 1322(c)(1) and look to its legislative history. This approach is not appropriate under the well-established rule of statutory construction that when the language of a statute is clear

the court should not look to legislative history. *See, e.g., Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989).[5]

Some courts have held that section 1322(c)(1) is ambiguous, requiring an analysis of when property is "sold" or when the sale is "complete" under applicable non-bankruptcy law. *See, e.g., Christian v. Citibank, F.S.B.,* 214 B.R. 352, 355–56 (N.D.Ill. 1997) (state-law approach applied); *McEwen v. Federal Nat'l Mortgage Ass'n,* 194 B.R. 594, 596 (N.D.Ill.1996) (without addressing issue, court looks to Illinois law to determine when sale occurs); *In re Downing,* 212 B.R. 459, 462 (Bankr.D.N.J.1997); *In re Rambo,* 199 B.R. 747, 751 (Bankr.W.D.Okla.1996) (state-law approach applied); *In re Barham,* 193 B.R. 229, 232 (Bankr.E.D.N.C.1996)

(same); *In re Ross,* 191 B.R. 615, 618 (Bankr.D.N.J.1996) (same); *In re Jaar,* 186 B.R. 148, 152 & n. 4 (Bankr.M.D.Fla.1995) (same); 8 *Collier on Bankruptcy* ¶ 1322.15 (Lawrence P. King ed., 15th ed. rev. 1997) (same).

As noted above, we do not agree that section 1322(c)(1) is ambiguous. But, even if we were to turn to Wyoming law to determine when the sale occurred, we find that the bankruptcy court did not err in concluding that the property was "sold" or the sale was "complete" on the date of the foreclosure sale. The Wyoming courts have not directly addressed when property is "sold" at a foreclosure sale. However, in Wyoming, there is no requirement that a foreclosure sale be confirmed or approved by a court. Thus, on the date of the foreclosure sale, the substantive rights of the parties are fixed: the mortgagor retains legal title until the expiration

---

**5.** Furthermore, if we were to employ it, the legislative history to section 1322(c)(1) is not a reliable indication of Congress' intent as to the cut-off date in which a cure may be effected because it contains conflicting messages. Prior to the enactment of section 1322(c)(1) in 1994, there was no direction in section 1322 as to when a right to cure under subsection (b) of that section terminated. Consequently, considerable debate arose among the courts as to the critical point during the prepetition foreclosure process when a debtor's right to cure a mortgage under section 1322(b) terminated. *See In re Ragsdale,* 155 B.R. 578 (Bankr.N.D.Ala.1993) (review of the circuits); *see also Thompson,* 894 F.2d at 1228 (recognizing debate). While some courts looked to the applicable state law to determine when the foreclosure sale was "complete," others, relying principally on *Glenn,* 760 F.2d at 1428, and including the Tenth Circuit in *Thompson,* 894 F.2d at 1230, applied a bright-line test, terminating all cure rights under section 1322(b) on the date of foreclosure sale.

Section 1322(c)(1) was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394. The legislative history to section 1322(c)(1) states, in relevant part, that:

Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision in *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. See *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter*

*of Clark,* 738 F.2d 869 (7th Cir.1984), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The *Roach* case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.

This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through *completion of a foreclosure sale* under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy....

140 Cong. Rec. H10,769 (daily ed. Oct. 4, 1994) (emphasis added). This portion of the legislative history seems to advocate components of both approaches employed by courts prior to the passage of section 1322(c)(1) discussed above. In rejecting *Roach,* which applied a state-law test, Congress cited with approval *Glenn,* the principal case espousing the bright-line test. In the next breath, Congress refers to "completion" of the foreclosure sale, thus suggesting application of the state-law approach. Further, the comments of Senator Grassley indicate that a bright-line test should be applied. *See* 140 Cong. Rec. S14,462 (daily ed. Oct. 6, 1994) (floor statement of Sen. Grassley). As such, the legislative history does not provide any guidance as to the intent of Congress when it enacted section 1322(c)(1). *See Simmons,* 202 B.R. at 203 (indicating that there are numerous interpretations of the legislative history to section 1322(c)(1)).

of the three-month redemption period set forth in Wyoming Statutes Ann. § 1–18–103(a), and the mortgagee obtains a lien on the property that, by operation of law, converts into legal title at the expiration of the redemption period. Wyo. Stat. Ann. § 1–18–102 ("The certificate [of purchase] shall state that the purchaser is entitled to a deed for the property at the expiration of the period of redemption, unless the property is redeemed prior to that date as provided by law.") & § 1–18–110 (a deed conveys to the grantee all the title of the mortgagor); *First Southwestern Fin. Servs. v. Laird*, 882 P.2d 1211, 1216 (Wyo.1994) (purchaser obtains lien and mortgagor retains legal title during redemption period); *see Federal Land Bank v. Miller*, 730 P.2d 122 (Wyo.1986) (the purchaser of property at a foreclosure sale cannot later contest lien priorities). As such, the property was "sold" or the sale was "complete" on the date of the foreclosure sale.

The debtors argue that the foreclosure sale was not complete on the date of the foreclosure sale because they had a statutory right of redemption under Wyoming Statutes Ann. § 1–18–103(a). The debtors confuse their right to cure under section 1322(b) with their independent right of redemption under Wyoming law.

 A right of redemption is an interest of the debtor in property that is property of the estate under 11 U.S.C. § 541(a)(1). *Thompson*, 894 F.2d at 1230; *see Wragg v. Federal Land Bank*, 317 U.S. 325, 328, 63 S.Ct. 273, 275, 87 L.Ed. 300 (1943) (statutory right of redemption was interest within the jurisdiction of the bankruptcy court under the Bankruptcy Act). This right is separate from the ability to "cure" a default in a chapter 13 plan under section 1322(b). A "cure," as allowed under section 1322(b), "leaves most of the terms of the underlying loan agreement in effect, and merely allows the debtor to reverse any acceleration of the loan, caused by default, so that the debtor can 'catch up' on the defaulted amounts while maintaining current payments." *In re Christian*, 199 B.R. 382, 385 (Bankr.N.D.Ill.1996), *rev'd on other grounds, Christian*, 214 B.R. at 352. The right to redeem property, on the other hand, does not allow the debtor to reverse acceleration on the loan and catch up payments, but rather requires the debtor to pay the purchaser of the property the sum that it paid at a foreclosure sale plus interest and costs within a stated period of time. *See Wright*, 304 U.S. at 514–15, 58 S.Ct. at 1032–33 ("The person whose land has been sold at foreclosure sale and now holds a right of redemption is, for all practical purposes, in the same debt situation as an ordinary mortgagor in default; both are faced with the same ultimate prospect, either of paying a certain sum of money, or of being completely divested of their land."). The effect of redemption, at least in Wyoming, is to terminate the underlying mortgage, thus leaving nothing to "cure." *First Southwestern Fin. Servs.*, 882 P.2d 1211. In *Ross* the court stated:

> A distinction is drawn between the § 1322(c)(1) opportunity to cure a default on an obligation secured by a mortgage on the debtor's residence, and the identification of the property interests of the debtor, including redemption interests, in property pledged to secure that obligation after sheriff's sale.... [W]e reject debtor's contention that debtor's opportunity to cure default under § 1322(c)(1) depends upon the status of the debtor's property rights, including debtor's right to redeem, under state law. The debtor's opportunity to cure under § 1322(c)(1) terminates when the property is "sold at foreclosure sale." The debtor's state law right of redemption, to the extent that it exists when a bankruptcy petition is filed, extends for 60 days beyond the state law time frame by operation of 11 U.S.C. § 108(b) upon the filing of a petition.

191 B.R. at 617–18; *see Thompson*, 894 F.2d at 1230 (recognizing that equitable redemption before foreclosure sale, similar to "cure" under section 1322(b), allows debtor to refinance, but that post-foreclosure sale statutory redemption serves to assure a fair sales price at a foreclosure sale). Section 1322(c)(1), which limits a debtor's right to cure, therefore, does not abrogate a debtors' right of redemption. *Hric*, 208 B.R. at 25–26 (debtor may redeem property under state

law as extended by 11 U.S.C. § 108(b)); *Ross,* 191 B.R. at 617–19 ("A bright line cut-off of the debtor's opportunity to cure default at the point that the property is sold at a foreclosure sale is wholly consistent with the survival of debtor's redemption opportunities under state law, where applicable."); *Sims,* 185 B.R. at 867 (section 1322(c)(1) does not abrogate redemption rights). Although a debtor's opportunity to "cure" a mortgage default may be terminated under section 1322(c)(1) by a foreclosure sale, the debtor may still redeem the property sold at a fore-closure sale provided that the debtor does so according to applicable state law. Just as section 1322 does not affect a debtor's re-demption rights, it does not revive or expand those rights either. *Little,* 201 B.R. at 108; *Ziyambe,* 200 B.R. at 800; *Sims,* 185 B.R. at 864 n. 6 & 867; *see also Smith,* 85 F.3d at 1559 & n. 4 (under pre-section 1322(c)(1) law, a debtor cannot modify a right of redemption under a chapter 13 plan that is filed after a foreclosure sale).

■ Under Wyoming law, the debtors had three months to redeem the property from the Credit Union by paying the amount bid by the Credit Union, plus interest and other charges. Wyo. Stat. Ann. § 1–18–103. It is undisputed that the debtors did not exercise their right of redemption during the three-month period set forth under Wyoming law, or during any potential extension of that period under 11 U.S.C. § 108(b). Further-more, the debtors' plan, even as amended, does not propose to pay the Credit Union in accordance with Wyoming Statutes Ann. § 1–18–103(a), but rather proposes to cure the default to the Credit Union over 24 months and then continue payments on the note in accordance with its terms. Paying the Credit Union over a 24-month period is not a "redemption" under Wyoming law. Ac-cordingly, the debtors have lost all rights to redeem the property under Wyoming law.

## CONCLUSION

For the reasons set forth above, the order of the bankruptcy court is AFFIRMED.