**In re Laquita M. JACKSON, Debtor.**

**No. 10–20146.**

United States Bankruptcy Court, D. Kansas.

July 18, 2011.

---

George A. Wheeler, Kansas City, MO, for Debtor.

**ORDER DENYING, IN PART, DEBTOR'S MOTION FOR A COURT ORDER FINDING THE DISMISSAL OF DEBTOR'S CHAPTER 13 BANKRUPTCY PETITION WAS NOT A FINAL JUDGMENT (DOC NO. 113)**

ROBERT D. BERGER, Bankruptcy Judge.

Debtor's home was sold in foreclosure between the time an order dismissing her Chapter 13 case was entered and an order reinstating her case was filed two months later. Debtor moves for an order declaring the automatic stay protected the home because her counsel filed a motion to reconsider the dismissal order within 10 days of its entry. Debtor's motion is denied because the automatic stay ceases upon dismissal and a motion to reconsider does not reinstate it. However, the case shall proceed to a status conference on the issue of whether an equitable reason exists to set aside the foreclosure sale.

## Findings of Fact

Debtor filed her Chapter 13 petition on January 25, 2010, and her proposed plan on February 23, 2010. On March 8, Litton filed its proof of claim for $169,841.52 based on a home loan (Claim No. 5). Debtor objected to Claim No. 5 without explanation, simply stating she does not owe the claim even though she included a secured debt for $137,313.00 on Schedule D. Litton's proof of claim includes as support a note and mortgage against Debtor's home.

On March 23, the Trustee filed his second motion to dismiss citing lack of feasibility. Litton did not participate in the motion to dismiss. No one, including Debtor, objected to the Trustee's motion so an Order of Dismissal was entered on May 14, 2010. On May 21, Debtor's counsel filed a motion to reconsider the dismissal order.

On June 8, Litton recommenced its foreclosure sale procedure and provided notice the sale would take place on June 29. Pre-petition, Litton had obtained a default judgment of foreclosure against Debtor. Only taxing authorities entered their appearance and participated in the state court case. Debtor has never entered an appearance in the state court foreclosure action.

On June 15, Debtor and the Trustee appeared for a hearing on the motion to reconsider. A text order was entered reinstating the case contingent upon Debtor filing amended documents. Debtor was ordered to submit a written order reinstating the case by June 25. The case was continued to an August 15 pre-trial setting. Litton received notice of the text order by the Court's Electronic Filing System.

In the meantime, Debtor communicated with Litton through counsel; however, neither party took action to stop the foreclosure sale. Neither party advised the state court the bankruptcy dismissal was under reconsideration and conditionally reinstated. Neither party advised the Bankruptcy Court the property was scheduled for foreclosure.

The foreclosure sale was called on June 29, and Litton was the highest bidder with a credit bid of its state court judgment. At the time of sale, Debtor had not filed the amended documents required by the Bankruptcy Court. Debtor had not submitted the written order reinstating the case. On July 2, Debtor filed the required documents—an amended plan and schedules. On July 15, Debtor's counsel uploaded an Order Granting Motion to Reconsider, which was entered on July 19. Also on July 19, Litton received an approved Order Confirming Sale from the Internal Revenue Service and forwarded it to the state court judge. The state court entered the order on July 21. Also on July 21, the Bankruptcy Court entered an order confirming Debtor's amended plan. Debtor's plan proposes to keep the home and cure the default with monthly payments including pre-petition arrearage. Litton did not object to the plan prior to confirmation; however, in subsequent pleadings, Litton argues Debtor did not provide the requisite 21–day notice. The state court entered the order confirming the sale without notice the bankruptcy was reinstated. The Bankruptcy Court entered the order confirming the amended plan without knowledge the property had been sold by sheriff's sale.

On December 7, Debtor filed the motion seeking a court order which would declare the foreclosure sale violated the automatic stay. The claim objection is still pending. Litton has not sought stay relief nor has it filed a motion seeking relief from the confirmation order. Debtor has not sought

relief from the state court order in that forum.

## Discussion

### A. The Automatic Stay

▉ The automatic stay ceases upon dismissal.[1] A dismissal order is not subject to the 10–day stay of execution under Fed. R. Bankr.P. 7062.[2] A motion to reconsider a dismissal order does not reinstate the automatic stay.[3] Upon dismissal, the automatic stay no longer protects debtors or their assets from creditors' collection efforts. Reinstating the case does not retroactively reinstate the automatic stay with respect to creditor conduct that occurred between the dismissal and the reinstatement.[4] However, a foreclosure sale may be set aside for equitable reasons if the creditor acted in bad faith and with knowledge the court intended to reinstate the case upon submission of a written order.[5]

### B. 11 U.S.C. § 1322(c)(1)

▉ Congress enacted § 1322(c)(1) in 1994 to resolve the conflict among the courts and to establish a specific deadline by which a debtor could cure a mortgage default. Prior to 1994, the cure provision was considered ambiguous and there were inconsistent decisions as to what point in the mortgage or deed of trust foreclosure the debtor's right to cure ended, and with the amendment of the provision in 1994, Congress undertook some effort to eradicate this ambiguity.[6] Section 1322 now states, in relevant part:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> . . . .
>
> (2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .
>
> (3) provide for the curing or waiving of any default;
>
> . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>
> . . . .
>
> (c) **Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—**

---

1. 11 U.S.C. § 362(c)(2); *In re Hanson*, 282 B.R. 240, 246 (Bankr.D.Colo.2002).

2. Fed. R. Bankr.P. 9014(c).

3. *In re Rivera*, 280 B.R. 699, 701 (Bankr. S.D.Ala.2001).

4. *In re Hill*, 305 B.R. 100, 104–06 (Bankr. M.D.Fla.2003).

5. *See, e.g., In re Nail*, 195 B.R. 922 (Bankr. N.D.Ala.1996) (Oral order reinstating case was effective to reinstate stay upon pronouncement; foreclosure sale of debtor's home after oral order was void. Even if foreclosure was not void under stay, bankruptcy court equitably set aside the sale be-
cause creditor proceeded with foreclosure with knowledge of oral order); *In re Easton*, 882 F.2d 312 (8th Cir.1989); *but see In re Brown*, 290 B.R. 415 (Bankr.M.D.Fla.2003) (Oral order reinstating case not effective immediately against mortgagee who proceeded with foreclosure without notice of either motion to reinstate or oral order granting the motion).

6. *See McCarn v. WyHy Fed. Credit Union (In re McCarn)*, 218 B.R. 154, 161 n. 5 (10th Cir. BAP 1998), wherein the court briefly discusses the history and inconsistent interpretations, and wherein the court further observes that the 10th Circuit "applied a bright-line test, terminating all cure rights under section 1322(b) on the date of foreclosure sale."

**(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law** .... (Emphasis added).

Thus, a debtor may cure and reinstate a home mortgage until the property is sold in a foreclosure sale under § 1322(c)(1).

■■■■ Courts have diverged in determining whether § 1322(c)(1) is ambiguous. Most courts find the language clear and unambiguous. These courts state the cure provisions are only available before the sale date.[7] After the sheriff's sale, a good-faith third-party purchaser may be involved, and a debtor has no right to cure a default apart from a statutory right to redeem.[8] A state right of redemption is separate from an ability to cure a default under § 1322. A cure leaves the underlying mortgage intact, allows a debtor to reverse acceleration caused by default, and allows a debtor to repay past due amounts over time while maintaining monthly payments. The right to redeem, on the other hand, does not allow the debtor to reverse acceleration and catch up payments. Rather, the debtor must pay the entire amount the purchaser paid at the foreclosure sale plus interest and costs within a statutory period of time.[9] For these reasons, among others, when Congress enacted § 1322(c)(1), it pinpointed the sale date as the date debtors' cure rights ceased under bankruptcy law.

■■■■ The minority view finds § 1322(c)(1)'s language ambiguous and look to legislative history for a more liberal statutory interpretation. These courts find a debtor's right to cure is severed at the point when the foreclosure sale is completed under state law.[10] For example, a foreclosure sale under Oklahoma law is not deemed complete until it is confirmed by a state court. When a bankruptcy petition is filed between a foreclosure sale and a confirmation hearing, Oklahoma bankruptcy courts find the sale has not been "conducted in accordance with applicable nonbankruptcy law" and allow the debtor to cure the debt on his principal residence through a Chapter 13 plan.[11]

The minority view has been rejected because § 1322 is a federal law, and although it defers to the foreclosure sale taking place in accordance with state law, federal law sets the point along the foreclosure continuum at which cure rights cease to be an option for a debtor's Chapter 13 plan. As long as the creditor complies with state foreclosure law, a sheriff's

---

**7.** *See, e.g., Cain v. Wells Fargo Bank, N.A. (In re Cain),* 423 F.3d 617 (6th Cir.2005); *In re McCarn,* 218 B.R. at 161; *In re Smith,* 85 F.3d 1555 (11th Cir.1996); *In re Connors,* 497 F.3d 314, 321 (3rd Cir.2007) (Chapter 13 debtor may cure a home mortgage default only until the gavel falls at a foreclosure sale); *Colon v. Option One Mortgage Corp.,* 319 F.3d 912, 920–21 (7th Cir.2003) (right to cure a default is available only until the highest bid is entered and accepted at a judicial foreclosure auction).

**8.** *In re Thompson,* 894 F.2d 1227, 1230 (10th Cir.1990) (concluding pre–1994 law required

terminating cure rights at the foreclosure sale to protect independent third-party purchasers from facing redemption periods extended by bankruptcy).

**9.** *In re McCarn,* 218 B.R. at 162.

**10.** *See, e.g., Christian v. Citibank,* 214 B.R. 352, 355 (N.D.Ill.1997); *In re Downing,* 212 B.R. 459, 461 (Bankr.D.N.J.1997); *In re Jaar,* 186 B.R. 148 (Bankr.M.D.Fla.1995).

**11.** *See In re Rambo,* 199 B.R. 747 (Bankr. W.D.Okla.1996); *In re Faulkner,* 240 B.R. 67 (Bankr.W.D.Okla.1999).

sale conducted prior to the filing of a bankruptcy terminates the debtor's ability to cure.

### C. Kansas Foreclosure Law

A Kansas foreclosure sale is not complete until judicial confirmation.[12] The court has no authority to withhold confirmation except within its equitable jurisdiction and for reasons which in equity make the sale irregular.[13] Judicial confirmation is not automatic or ministerial. A sheriff's sale is not effective until a state court judge approves it. The sheriff is not allowed to issue a purchaser's certificate or deed without an order confirming sale. A creditor must obtain relief from the automatic stay before it may seek judicial confirmation of a pre-petition sheriff's sale.

### D. Analysis

The June 29 sheriff's sale did not violate the automatic stay because the case was dismissed, and the stay did not exist. Debtor had not taken the steps required to reinstate either the case or the stay. The oral order reinstating the case did not become effective until July 2 at the earliest when Debtor filed her amended documents. The written order entered July 19 reinstated the case and the stay. However, the creditor proceeded with a foreclosure sale even though a text order stated the case was conditionally reinstated. Further, the record does not disclose whether Debtor received notice (apart from publication) of the recommenced foreclosure sale.

The state court entered the Order Confirming Sale after the automatic stay had been reinstated and is void. Litton states it received an approved form of order from the U.S. Attorney's office on July 19—the same day the written order reinstating Debtor's case was entered. Litton neglects to state when and how the order arrived at state court. Litton may have violated the automatic stay by forwarding the form order confirming the sale to the state court judge without advising the state court Debtor's bankruptcy was reinstated. Giving Litton the benefit of the doubt, the order could have been forwarded before the written order reinstating the stay was entered on the same day; however, Litton had notice by bankruptcy text order the case was reinstated upon filing amended documents, and Litton had notice the amended plan was filed July 2.

Although a Kansas foreclosure sale is not complete until judicial confirmation, § 1322 unambiguously terminates a debtor's right to cure at the sheriff's sale. As long as the sheriff's sale was conducted in accordance with Kansas law, Debtor's cure rights cannot be revived. The questions remaining in this case are whether the creditor's conduct in pursuing a foreclosure sale under notice of the case's conditional reinstatement and the Debtor's knowledge or lack thereof of the intervening foreclosure sale present equitable reasons sufficient to set aside the foreclosure sale.[14] In many cases cited herein, the

---

12. *Zimmerman v. Rose*, 111 Kan. 22, 206 P. 336 (1922); *Broughton v. Murphy*, 155 Kan. 454, 126 P.2d 207 (1942).

13. K.S.A. § 60–2415; *Liberty Savings & Loan Ass'n v. Hanson*, 145 Kan. 174, 64 P.2d 609 (1937); *Citifinancial Mortgage Co. v. Clark*, 39 Kan.App.2d 149, 177 P.3d 986 (2008).

14. Additionally, Debtor is under Court order to produce current bank statements for *in camera* review to prove she has the funds representing her required monthly payments to Litton for the past year, which would be about $20,000. If Debtor has not saved those funds pending resolution of this issue, then the feasibility of Debtor's plan is threatened. The Court has also previously directed that

debtor delayed until after the sale to file his initial bankruptcy petition. Equity provides no reason to set aside a sale which occurred because the debtor did not timely seek relief. However, in this case, Debtor obtained a conditional order reinstating her case. The creditor proceeded with the sale, perhaps assuming the conditions would not occur. The issue is whether this particular sequence of events produces an equitable irregularity significant enough to make the sale unconfirmable under Kansas law. Subject to note 14 *supra*, the case must proceed to a status conference to determine these questions as they are not resolved based on the record before the Court.

### Conclusion

For the foregoing reasons, Debtor's Motion is Denied, in part. A separate order setting a status conference date shall issue forthwith, subject to the Debtor's strict compliance with requirements set out in note 14 *supra*. Debtor's failure to comply with the requirements set out in note 14 shall result, at the Court's discretion, in a judgment in Litton's favor, including validation of the sheriff's sale and confirmation thereof.

the Debtor, during the pendency of the issues addressed in this opinion, deposit her monthly mortgage note payments with her attorney. At the most recent hearing, the Court learned that these payments had not been deposited with her attorney, but had been deposited into her own account. The Debtor did deliver a document which has insufficient content to establish that her monthly mortgage note payments had been deposited into a separate bank account. Failure of the Debtor to provide copies of the bank statements for *in camera* review by this Court within 30 days from the date of this opinion shall constitute

grounds for this Court, to the extent necessary, to annul the automatic stay in this case and, to the extent necessary, to allow the state court order confirming sale and the attendant sheriff's sale to remain valid and not to void or set aside for equitable reasons the sheriff's sale and confirmation thereof. If the Debtor was not able to deposit the monthly mortgage note payments as directed by this Court, then her plan to retain the residence and to cure the prepetition default is not feasible and equity does not dictate that this Court engage in equity on Debtor's behalf.